COLE v. ARMOUR, et al., Appellants.

In Banc, February 20, 1900.

1. **Suit on Contract:** RECOVERY. Where plaintiff sued on a special verbal contract with his brother, to pay him $25,000 for his interest in their ranch and for his services in managing it, he must recover upon the contract or not at all. This is the rule, although the evidence develops a cause of action for money had and received or a *quantum meruit* for work and labor done and services performed, or some other good cause of action.

2. ———: ———: EVIDENCE. In such case evidence of the reasonable value of the services performed should be excluded. And if the brothers were partners, the plaintiff is not entitled to recover for such services unless there was a special agreement therefor, and hence all evidence as to the value of the services should be excluded.

3. ———: ———: ———: VALUE OF FARM, ETC. And where the plaintiff owned a part of the farm and his brother sold the whole to a third party, and agreed to pay plaintiff so much money for his part of the land for his share of the stock, etc., evidence tending to prove such facts will not support a plea on such a special contract.

4. ———: ———: VERDICT NOT RESPONSIVE TO ISSUES. Where plaintiff sues on a special contract, claiming there is due him on said contract a balance of $12,229.34, and the defense is a denial of the existence of the contract, and no set-off or payment is pleaded, plaintiff is entitled to the amount sued for, or to nothing at all, and a verdict for $6,000 can not stand, for it is not responsive to the issues. Nor does the fact that plaintiff does not complain of the verdict afford any justification for permitting it to stand.

5. ———: EVIDENCE: ADMISSIONS OF DECEASED PERSONS. In a suit against executors of a deceased person, on a special verbal contract, the testimony of witnesses as to loose declarations and admissions of the deceased, made long prior to his death, are admissible as evidence, but are entitled to little weight.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,* Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellants.

(1)   The entire record discloses a failure on the part of plaintiff to prove his case.   The evidence neither sustains the allegations of his petition nor shows his right to recover. Denny v. Kyle, 16 Mo. 454; Stout v. St. Louis Tribune Co., 52 Mo. App. 346; Turner v. Mellier, 59 Mo. 535; Clements v. Yeates, 69 Mo. 625; Smith v. Haley, 41 Mo. App. 616; Whipple v. Peter Cooper B. & L. Ass'n, 55 Mo. App. 554; Feurth v. Anderson, 87 Mo. 354; Groll v. Tower, 85 Mo. 249; Smith v. Shell, 82 Mo. 215.   (2)   The court erred in giving the first instruction asked by plaintiff.   Stokes v. Distillery Co., 64 Mo. App. 420; Jones v. Grossman, 59 Mo. App. 195; Manufacturing Co. v. Troll, 69 Mo. App. 475.  (3) The court erred in refusing to admit in evidence proffered testimony by competent witnesses that shortly before his death testator denied that he owed plaintiff anything whatever.   Kennedy v. Kennedy, 57 Mo. 73; Carney v. Carney, 95 Mo. 353; Ringo v. Richardson, 53 Mo. 385; Cornet v. Bertelsman, 61 Mo. 118; Benne v. Benne, 56 Mo. App. 504; Greenl. on Evid., sec. 200; State v. Howard, 118 Mo. 142.   (4)   The verdict of the jury showed upon its face that it was a perverse verdict, and it should, therefore, have been set aside.   It should have been for the full amount claimed in plaintiff's petition or for nothing.   Werringer v. Ahlemeyer, 23 Mo. App. 277; Rafferty v. Railroad, 15 Mo. App. 559.   (5)   The trial judge erred in not sustaining defendant's motion for a new trial since in its opinion the verdict was against the weight of the evidence.   Bank v. Wood, 124 Mo. 72; Railroad v. Ryan, 49 Kan. 1; Kreis v. Railroad, 131 Mo. 533.   (6)   The court erred in refusing instruction 18 asked by defendants, which reads as follows: "The jury are instructed that although the admissions of Thomas C. Cole are competent evidence in behalf of plain-

tiff, yet they are to be received and considered by the jury with great caution." Greenl. on Evid., sec. 200; Chouquette v. Barada, 28 Mo. 499; State v. Seal, 47 Mo. App. 608; Ringo v. Richardson, 53 Mo. 394; Hope v. Evans, 1 Sm. & Mar. Ch. 204; Carney v. Carney, 95 Mo. 353.

*F. M. Black* and *Durall & Clear* for respondent.

It is insisted that the judgment should be reversed, because the verdict is for $6,000 when it should either be for $12,000 or for nothing; and this seems to be the ground on which the opinion of the Supreme Court in Division One is based. To understand this question it is essential to refer to the instructions so far as they relate to the measure of damages. These instructions, both on the one side and the other, do not require the jury to find in any given amount. The door is purposely left wide open. The cases cited by the defendants as supporting their contention are Rafferty v. Mo. Pac. Ry. Co., 15 Mo. App. 559, and Werringer v. Ahlemeyer, 23 Mo. App. 277. The first of these cases was an action by husband and wife for damages for the death of a child. The action was based upon that clause of our damage act which provides that the damages recovered must be $5,000 or nothing; and so the jurors were clearly and plainly instructed. The jury found for the plaintiffs in the sum of $2,500. In Alderman v. Cox, 74 Mo. 78, this court said: "The defendant has no ground of complaint because the jury found a verdict for plaintiff for 'just one-half of the amount' the latter claimed was due him, notwithstanding the evidence as to the amount due him was uncontradicted. The defendant can not be said to have been injured because compelled by the verdict to pay a less sum than he contracted to pay. Were the plaintiff complaining, a different question would be presented; one not necessary to be now considered. The result is, we affirm the judgment." See, also, Gety v.

Sack, 19 Mo. App. 477; Chinn v. Davis, 21 Mo. App. 365; Gifford v. Weber, 38 Mo. App. 595; Dobbs v. Cate's Estate, 60 Mo. App. 659.   So it was held in Crawford v. Ahrens, 103 Mo. 96, in an action of ejectment, that the defendant had no right to complain because the judgment was for less land than the plaintiff was entitled to recover.   See, also, Wood v. Belden, 54 N. Y. 65.

IN DIVISION ONE.

MARSHALL, J.—Prior to 1870, Thomas C. Cole and his brother, the plaintiff, James C. Cole, lived in Milwaukee. In that year Thomas moved to Kansas City, Mo., and entered the employ of Plankington & Armour, now the Armour Packing Co., and remained in such employ until his death, having for many years been one of their highest salaried men.  Soon after his removal to Missouri, Thomas acquired a ranch in Lincoln county, Kansas, and in 1874, James sold some property he owned in Wisconsin for some thirty-six hundred dollars, and moved to Kansas and became the manager of the ranch aforesaid.

The evidence is conflicting as to whether he was the manager for or the partner of his brother.   In 1884, the ranch consisted of 3,949 acres, of which 640 acres stood in the name of James, and the evidence is also conflicting as to whether James paid for this 640 acres or whether Thomas did so.

On the 8th of March, 1884, Thomas entered into the following contract of sale of the ranch to J. F. Corle, of Kansas City:

"This memorandum of agreement made and entered into this eighth day of March, A. D. 1884, by and between T. C. Cole and J. F. Corle, both of the City of Kansas, county of Jackson and state of Missouri, WITNESSETH:

"*First.*   The said Cole has this day sold to said Corle

four hundred and fifty-two cattle, more or less, the exact number to be determined by actual count at the time of delivery on the ranch, at the price and sum of thirty dollars per head, spring calves not to be counted. Also twenty-six horses, mules and colts, more or less, the exact number to be ascertained by count, after said Cole has reserved such of said ponies as he desires to keep, at the price and sum of fifty dollars per head. Also all the farm machinery, harness, corn, rye, wagons, buggies, car of fence wire and posts, without extra charge.

"Also three thousand nine hundred and forty-nine acres of land, at the price and sum of ten dollars per acre. Said land is situated in the county of Lincoln and state of Kansas, and is particularly described as follows: The west half of the northwest quarter of section sixteen, all of sections seventeen, eighteen and nineteen, the west half of section twenty, all of section twenty-one except the northeast quarter, the north half of section twenty-two, all of section twenty-nine, the northeast quarter of section thirty; fifteen acres excess in the northwest quarter of section eighteen, fourteen acres excess in the southwest quarter of section eighteen, all of the said real estate being in township twelve and range nine, west.

"*Second.* In consideration of the foregoing sale by said Cole, the said Corle, in payment therefor, has this day sold to said Cole the following described real estate, situate in the county of Jackson and state of Missouri, to wit: Lots twenty-seven, twenty-eight, twenty-nine, and thirty, in block forty, in Turner & Company's addition to the City of Kansas.

"Upon this property is a deed of trust securing the payment of five notes of fifty-five hundred dollars each, due August 9th, 1884, 1885, 1886, 1887 and 1888 respectively, bearing interest at the rate of five per cent per annum, payable semiannually. This deed of trust and the notes secured thereby are to be assumed by said Cole, the said Corle paying

Cole v. Armour.

him the interest thereon from February 9th, 1884, to the time of closing this transaction and exchanging deeds. This real estate of said Corle is put into the trade, after deducting the notes assumed by said Cole, as aforesaid, at the sum of forty-four thousand five hundred dollars, and the remainder of the purchase price for said Cole's property is to be paid by said Corle in cash, amounting to about nine thousand eight hundred and fifty dollars.

"*Third.*   Said Corle is to furnish said Cole a complete abstract of title to his said property from the United States down to date, and the same is to be submitted to Lathrop & Smith, for examination, and the title shall be subject to their approval.   Said Corle shall also furnish said Cole such certificates as to judgments and taxes as shall be required by said Lathrop & Smith.

"Upon approval of title, said Corle shall execute and deliver a good and sufficient warranty deed to said property to said Cole, excepting only said deed of trust hereinbefore referred to, and special taxes for paving Union avenue.

"If said title be disapproved by said Lathrop & Smith, the contract shall be canceled.

"Said Cole is to furnish said Corle complete abstract of title to his said property and certificates as to judgments.

"*Fourth.*   Upon delivery of said deed, the said Cole shall deliver a bill of sale and turn over actual possession of the personal property hereinbefore described to said Corle at the ranch in Lincoln county, Kansas, and shall deliver to said Corle a good and sufficient warranty deed to the real estate in said county, above particularly described.

"*Fifth.*   Each party shall pay the taxes for 1884 on the property now owned by him.

"*Sixth.*   The said T. C. Cole shall have his brother, James C. Cole, now in charge of his ranch, remain in charge thereof until the first day of July, A. D. 1884, and the said Corle agrees to retain him until that time and pay him the

sum of one hundred and twenty-five dollars per month for his services from the time the said property is conveyed to him.

"*Seventh.* The said Corle agrees to buy all the meat, lard, provisions and furniture at the ranch at such prices as may be agreed upon between the said James C. Cole and himself.

"*Eighth.* Exchange of properties by delivery of proper conveyances turning over possession of personal property and payment of amount of money required, shall be made on or before the twentieth day of March, A. D. 1884; provided, however, that if either party should require additional deeds or other evidences of title, a reasonable time thereafter shall be allowed to procure the same.

"Witness our hands the day and year first above written.

"It is agreed that possession of said cattle, horses, mules, camp outfit and ranch property, and the ranch shall be turned over by said Cole to said Corle on the 11th day of March, A. D. 1884, he assuming the expense and management thereof from that day, and the said Corle shall turn over to said Cole possession of his said real estate in Kansas City on the same day, interest being paid by said Corle on the notes secured by deed of trust to that date, and the said Cole taking the rents from said 11th day of March, 1884.

"This exchange of properties shall depend upon approval of title as hereinbefore provided."

The total value of the property turned over to Thomas by Corle, according to the testimony of the latter, was $82,428.47, which was made up of the following items:

Real estate in Kansas City.................$72,000.00
Corle's check to Thomas, cash................  7,752.05
Note of Thomas held by Corle................  2,100.00
Interest on said note ......................    158.66
19 days' rent on Kansas City real estate........     45.76
Unexpired insurance on Kansas City real estate.    381.77

　　　　Total ...... .... ............ ......$82,438.24

For this Corle was paid by Thomas in the following manner:

| | |
|---|---|
| Mortgages on Kansas City property 5 notes $5,500 each, assumed by Thomas | $27,500.00 |
| Past due interest on same assumed by Thomas | 252.07 |
| 3,973 acres of land, at $10 | 39,730.00 |
| 439 cattle | 13,170.00 |
| 24 horses and mules | 1,200.00 |
| Household goods, supplies, etc | 574.50 |
| Total | $82,426.57 |

James made a deed to Corle of the $640 acres which stood in his name, and shortly after the sale he moved, with his wife, and Emma Ide, who lived with his family, to Kansas City, and after remaining some five months at his brother's house, he moved into another place in Kansas City where he has since resided.

Thomas died on the 4th of November, 1892, and on the 20th of November, 1895, James filed in the probate court a claim against his estate for $32,006.88, after allowing all credits and set-offs, itemized by him at the sum of $12,770.66, basing the claim upon an alleged agreement between Thomas and James, made about February 15th, 1884, whereby Thomas agreed to pay James $25,000, "in consideration that he would assign and forever quitclaim all his interest in and to the said 'Cole Ranch,' and in consideration that he would receipt the said Thomas C. Cole in full for ten years of work and labor plaintiff had performed on said ranch," "and plaintiff performed his part of said contract and agreement at the time and place aforesaid."

The probate court refused to allow the claim and plaintiff appealed to the circuit court, where on the first trial plaintiff obtained a judgment for $3,000, which was set aside by the court, on motion of the defendants.

Thereafter on the 13th of April, 1896, plaintiff filed an amended petition as follows:

"Plaintiff, for his cause of action against defendants herein, says:

"That the said S. B. Armour and Frank Askew were duly appointed executors of the last will and testament and estate of Thomas C. Cole by him during his lifetime.

"That on or about the 15th day of February, 1884, Thomas C. Cole, deceased herein, and plaintiff were the owners of a certain ranch, designated the 'Cole Ranch,' situated in the county of Lincoln, state of Kansas, and which ranch was afterwards on or about said date sold and delivered by Thomas C. Cole and plaintiff to one J. F. Corle for a large sum of money and property, to wit: Value and consideration eighty-two thousand four hundred and twenty-eight dollars and forty-seven cents, for said ranch.

"That on or about the 15th day of February, 1884, the said Thomas C. Cole, herein, mutually agreed and contracted with the plaintiff, James C. Cole, that for and in consideration of twenty-five thousand dollars, to be paid to plaintiff by Thomas C. Cole, the plaintiff herein would transfer and deed his right, title and interest in real estate in said Cole Ranch to J F. Corle, and assign and sell his interest in the stock, including cattle, hogs, horses, etc., on said ranch to said J. F. Corle, and acknowledge settlement to Thomas C. Cole, in full for ten years of service on said Cole ranch, as manager and for work and labor performed by plaintiff at the special interest and request of the said Thomas C. Cole, in taking care of the part owned by Thomas C. Cole, all plaintiff's interest in and to said Cole ranch to be transferred to the said J. F. Corle, which plaintiff then and there did, and plaintiff fully performed his part of said contract and agreement by transferring all his right, title and interest to the said J. F. Corle, and that the property and consideration for said transfer and assignment was then and there delivered to Thomas C. Cole, by J. F. Corle, to-wit, in the total sum of $82,428.47, all in Lincoln county, Kansas.

"That pursuant to said contract and agreement the said Thomas C. Cole has paid and caused to be paid on the said indebtedness of twenty-five thousand dollars due to James C. Cole, the amounts indicated in the statement filed herein and marked 'Exhibit A,' and made a part of plaintiff's petition and cause of action; that Thomas C. Cole died in November, 1892, and that defendant and his heirs have paid and caused to be paid on said indebtedness and contract the said sums as specifically indicated on said 'Exhibit A.' That defendants herein, by virtue of said contract and agreement, heretofore set forth, are indebted to the plaintiff, after allowing all just set-offs and payments made by Thomas C. Cole and his heirs and executors, with interest at six per cent, as specifically indicated in said 'Exhibit A,' in the sum of twenty-nine thousand, five hundred and one dollars and eighty-eight cents, principal $12,229.34, interest $17,272.54, amount paid $12,770.66 on principal, as per 'Exhibit A.'

"Wherefore plaintiff demands judgment against the said defendant in the sum of twelve thousand, two hundred and twenty-nine dollars and thirty-four cents, balance principal due, as per 'Exhibit A,' together with the costs of this action."

The "Exhibit A," referred to, is as follows:

"Estate of Thomas Candy Cole, deceased, Dr.
                "To James C. Cole.

"By virtue of contract and agreement, as hereto attached and specifically set forth in plaintiff's petition filed herein, the sum of $25,000.

"Pursuant to said contract and agreements the deceased Thomas C. Cole, and the heirs and executors have paid on said contract and agreement the following, which are set-offs and are deducted from said total amount, interest figured at legal rate, 6 per cent:

Sept. 18, 1884, lot 22 and north half of lot 21, in
    block 4, East Side Place, in Kansas City,
    Mo.......  ......  .........  ......  ..$3,000.00
March 14, 1887, lot deeded to Andrew Bear.... 1,750.00
May 12, 1884, to April 18, 1887, monthly payments
    of $50 each for 2 years, 11 months, and 4
    days, an itemized statement of which is in
    possession of heirs and executors....... 1,756.66
April 18, 1887, to Feb. 22, 1889, monthly payments
    on said contract of $50 each, itemized
    statement in possession of heirs and exe-
    cutors ..........  ..................1,168.00"
Then follows items of cash, etc., ranging from 50
    cents for groceries to $85 in cash, received
    between March 5th, 1889, and Nov. 4th,
    1892, the date of Thomas' death, aggregat-
    ing ......  ......  ......  ......  ...... 2,061.00
Also items specified as "Estate paid cash on said
    contract," received between Nov. 14th
    1892 and Nov. 19th, 1895 (the last being
    the day before the claim was filed),
    aggregating.....  .........  ....  ....$1,525.00

   There is no summing up of the credits and deduction
thereof from the alleged debt of $25,000, but in two places
in the exhibit a "balance due" is stated, which presumably
is increased by the addition of interest. The total credits
figure up $11,260.66, which does not correspond with the
total credit of $12,770.66 allowed in the petition, the latter
exceeding the former by $1,510, and there is no explanation
attempted in the testimony of this discrepancy. But the
exhibit concludes with this statement: "Amount due after
deducting all legal set-offs, with interest at legal rate, 6 per
cent, of said contract and agreement, $32,006.88." The
amended petition however prays for the recovery of only
$12,229.34, which is arrived at by taking the principal of
$25,000, and deducting therefrom amounts alleged to have
been received on account thereof, $12,770.66, leaving a

balance of $12,229.34, the interest amounting to $17,272.54, being thrown off, though it is nowhere stated why. .

There was no note or memorandum in writing of any kind claimed or shown to exist evidencing this claim. The plaintiff's whole case to prove the contract rests upon the testimony of Emma Ide, who went to live with plaintiff's family, she says, as one of the "help," when she was sixteen years old, and had lived with his family for twenty-two years at the time she testified on the last trial of the case.

She states that about 10:30 o'clock on the forenoon of February 15, 1884, Thomas arrived at the ranch, and about 11 o'clock the agreement was made between Thomas and James. Her version is as follows:

"Q. State to the jury in your own way, where that agreement was made and when and who were present? A. It was on or about the 15th day of February, 1884, in what we called the front room, or sitting room of the house that Mr. James Cole lived in on the Cole ranch.

"Q. Who all were present? A. Mr. James Cole, Mrs. James Cole, Stewart Jackson, Mr. T. C. Cole and myself.

"Q. Go ahead and state the agreement? A. In conversation Mr. T. C. Cole spoke to Mr. James Cole and said to Mr. James Cole, 'Mr. Corle will buy the ranch. I have made up my mind to sell it to him if you are willing; if you will sign off all your rights and interest in the ranch to Mr. Corle, and I will pay you whatever you think is right, but I have made up my mind to pay you $25,000 if you will accept that much.' Mr. James Cole answered him in a few minutes saying he would accept it. Mr. T. C. Cole spoke and said, 'All right, I will pay you that. And we can then go ahead and close up the deal with Mr. Corle as soon as possible.' In the evening of the same day we were in the sitting room again and the conversation was resumed about what Mr. T. C. Cole should pay Mr. James

Cole, and in the conversation he said to Mr. James Cole, 'I will pay you $10,000 as soon as you get down to Kansas City and the other $15,000—it won't be but a short time until I can pay you that. I will soon be in good shape and I can settle with you and pay you all.'

"Q. Were the same people present during the latter conversation as during the former? A. Yes, sir.

"Q. On the same day? A. Yes, the same day.

"Q. The ranch was transferred then? A. Yes, to the best of my understanding, it was transferred."

Aside from this, plaintiff relies upon the testimony of Mrs. Thomas Beecher, a sister of the plaintiff, of Cassius Rogers, who married her daughter, and of Michael Dively, that Thomas admitted to them that he owed his brother, James, $25,000 for his interest in the land, and did not want his (Thomas's) daughters to know it, so he always denied it in their presence, but that wherever he could get any money without their knowing it, he paid it to James, on account of said indebtedness; also upon the testimony of Ira C. Busick that he sold 480 acres of land to James and at the same time 600 or 800 head of sheep and some cattle, some years after James came to Kansas; also upon the testimony of Michael Dively that Thomas told him that he and James owned the ranch and that Thomas never claimed to him that he had any interest in the stock of the ranch; also upon the testimony of Mrs. Cornelia Dively, that Thomas told her that he and James had a ranch in Kansas and that he was glad they sold it, for James and his wife, Betsey, were working themselves to death out there and James's health was very poor.

Plaintiff also relies upon the testimony of S. B. Armour, William Coleman, W. C. Alcutt, Robert Moody, and Frank Askew, that James had told them that Thomas owed him this twenty-five thousand dollars, but none of these statements of James were made in the presence of Thomas, and

the testimony of Thomas's denial when they were repeated to him, was excluded by the court.

In the spring of 1891, Thomas was very ill, and James went to his house and told General Askew, a friend and neighbor who was there, that Thomas owed him twenty-five thousand dollars as his share of the proceeds of the sale of the Kansas ranch, and as it was not in writing, he, James, wanted to get some written evidence of it. At that time Thomas was so ill no business was brought to his attention, but James stayed to dinner, and at the table General Askew told Thomas's daughters of James's claim, and they demanded to know the particulars of it, but James refused to discuss the matter with them and told them not to mind about it. When Thomas got better, James's claim was called to his attention, but his reply that he did not owe James a cent but on the contrary had been contributing to his support for a large number of years, was excluded by the court.

It appears that about March 7, 1888, Thomas collected $388 of the $1,750 mortgage which Thomas had turned over to James, and which is the second item of credit in "Exhibit A," under date of March 14, 1887, and when he took it to James he asked him to lend it to him, which James did, and thereupon Thomas called for paper, pen and ink and made out and delivered to James a promissory note therefor, agreeing to pay eight per cent interest thereon.

Thereupon the court instructed the jury as follows:

### PLAINTIFF'S INSTRUCTIONS.

1. The court instructs the jury, that if you find and believe from the evidence that the plaintiff, James C. Cole, at the instance and request of Thomas C. Cole, performed for the said Thomas C. Cole, in his lifetime, services on the ranch known as the Cole ranch, mentioned in plaintiff's petition, prior to February 15, 1884, and that the plaintiff,

James C. Cole, and Thomas C. Cole were the owners of said Cole ranch and some live stock and personal property on the same, and further find and believe from the evidence that while plaintiff still owned an interest in said Cole ranch and some live stock and personal property on the same (if you find from the evidence such to be the fact), Thomas C. Cole, deceased, and plaintiff, James C. Cole, entered into a verbal agreement and contract, on or about February 15, 1884, whereby the said Thomas C. Cole agreed to pay twenty-five thousand dollars to the plaintiff, James C. Cole, in consideration that James C. Cole would receipt and discharge the said Thomas C. Cole from all claims (if you find any such claims existed) for services performed by plaintiff on the said Cole ranch up to the time of this agreement and contract (if any), and in consideration that plaintiff would transfer all his, James C. Cole's, interest in and to said Cole ranch to one J. F. Corle, and would also transfer to said J. F. Corle the live stock and personal property (if any) which plaintiff then and there was interested in on said Cole ranch; and if you further find and believe from the evidence that plaintiff did, pursuant to the said verbal agreement and contract, receipt and discharge the said Thomas C. Cole in his lifetime, from all services performed by plaintiff on said Cole ranch, and that plaintiff did convey and transfer all of his, plaintiff's, interest in and to said Cole ranch to the said J. F. Corle, and did transfer to the said J. F. Corle all of the live stock and personal property in which plaintiff had any interest on said Cole ranch, and did in all respects perform his, plaintiff's, part of said verbal agreement and contract; and if you further find and believe from the evidence that the debt, if any, arising out of said verbal agreement and contract is due, and that the same, or any part thereof, is yet unpaid, and has been demanded of the said Thomas C. Cole in his lifetime, then your verdict must be for the plaintiff.

2. The court instructs the jury, that if you find for

the plaintiff and find that the twenty- five thousand dollar debt, or any part thereof, arising out of the verbal agreement and contract in evidence, has not been entirely paid, then you will find, after allowing all just claims, set-offs and payments, the balance due, not exceeding twelve thousand, two hundred and twenty-nine dollars and thirty-four cents the amount claimed in the petition herein.

### DEFENDANT'S INSTRUCTIONS.

2. Even though the jury may believe from the evidence that part of the Lincoln county ranch stood in the name of James C. Cole, still the jury can not find for the plaintiff for the value of any such land—but can only find for him on proof of an express contract, alleged to have been made in February, 1884, for the payment of $25,000, to him for the balance due upon such contract.

3. Although the jury may believe from the evidence, that a homestead and timber claim and other land, amounting in all to 640 acres, may have stood in the name of James C. Cole, and may have been paid for by him, still plaintiff would not be entitled to recover the value of any such land in this action, but is only entitled to recover upon proof of an express contract for the payment of $25,000, made on or about the 15th day of February, 1884, as explained in other instructions.

4. The assessments of the stock in Lincoln county, Kansas, can only be considered by the jury as showing the fact that they were assessed in the name of James C. Cole, and not as evidence that they were actually owned by him.

10. If the jury believe from the evidence that any witness has willfully sworn falsely to any material fact, they are at liberty to disregard the entire testimony of such witness.

MODIFIED INSTRUCTIONS GIVEN BY THE COURT.

1.   The burden of proof is on the plaintiff to satisfy the jury by a preponderance of the evidence that Thomas C. Cole, in the year 1884, was indebted to him for land which he owned and for services which he had rendered.

5.   If you find that it was understood between plaintiff and T. C. Cole that plaintiff was to be furnished a home and living expenses for his services on the Kansas land, then before the jury can find a verdict in the plaintiff's favor on account of services rendered, the jury must be satisfied that there was a contract between the plaintiff and Thomas C. Cole for compensation for such services, in addition to his house and living expenses while on the Kansas ranch, and that the same has not been paid.

7.   Before the jury can find for the plaintiff they must determine from the evidence the amount actually due him from Thomas C. Cole for services rendered, and also the amount actually due him from Thomas C. Cole for lands and personal property sold, less the amounts which the evidence shows have been paid thereon.

8.   If the jury believe from all the facts and circumstances in evidence that Thomas C. Cole furnished the plaintiff with a home and support while he lived upon the Kansas ranch, without any agreement for compensation for his services in addition thereto; that the land which stood in the name of the plaintiff was all paid for by said Thomas C. Cole; that the personal property thereon belonged to Thomas C. Cole; that after the sale of the Kansas ranch the said Thomas C. Cole furnished the plaintiff with a home in Kansas City and continued to support him until he, the said Thomas C. Cole, died, as a matter of affection and bounty, and not in fulfillment of any contract, then plaintiff can not recover.

9.   In determining upon their verdict the jury are entitled to take into consideration the relations of the par-

ties both prior and subsequent to the alleged agreement of Thomas C. Cole to pay James C. Cole $25,000, also the fact that the same was not in writing, the reasonableness or unreasonableness of the contract, and the alleged consideration therefor, together with all the other facts and circumstances detailed in evidence.

The court also gave, of its own motion, instructions numbered 2 and 10 as follows:

2.    The burden of proof is on the plaintiff to satisfy the jury by a preponderance of the evidence that he performed services on the Kansas ranch for Thomas C. Cole, and at his instance and request, from 1874 to 1884; (2) that he was jointly interested in the land forming part of said ranch with said Thomas C. Cole; (3) that he was jointly interested with said Thomas C. Cole in the personal property, or a part thereof, on said ranch; and (4) that in February, 1884, in consideration of the said services and said interests in the land and personal property, the said Thomas C. Cole contracted and agreed to pay the said James C. Cole the sum of twenty-five thousand dollars, and by preponderance of the evidence is meant the greater weight of credible testimony in the case.

10.    If the jury believe from the evidence that Thomas C. Cole paid James C. Cole for all of his services on the ranch prior and up to the alleged contract of February, 1884, for $25,000, that fact should be considered by the jury in connection with all the other facts and circumstances in evidence in the case in determining whether said alleged contract for $25,000, was actually made.

The jury returned a verdict for the plaintiff for $6,000, and after proper steps the defendants appealed to this court.

I.

The plaintiff sued on a special contract, and therefore he must recover upon that or not at all in this action. Hav-

ing elected to stand upon a special contract, he can not recover for money had and received to his use, for his share of the sale of the "Cole Ranch" or upon a *quantum meruit* for work and labor done or services rendered. [Clements v. Yeates, 69 Mo. l. c. 625; Feurth v. Anderson, 87 Mo. 354; Groll v. Tower, 85 Mo. 249; Smith v. Shell, 82 Mo. 215; Stix v. Matthews, 75 Mo. l. c. 99 and 100; Ray v. Bowles, 83 Mo. l. c. 170; Sumner v. Rogers, 90 Mo. 324; Johnson-Brinkman Co. v. Central Bank, 116 Mo. l. c. 567; Huston v. Tyler, 140 Mo. 252.] The reason of the rule is well stated in Clements v. Yeates, *supra*, as follows: "There can be no question that the action in the present instance is brought upon the draft, and upon nothing else. This being true, a recovery must be had upon the instrument sued on, or not at all. Repeated adjudications of this court, if authority were really needed for so plain a proposition, have established that you can not sue upon one cause of action and recover upon another......And we do not regard our code with all its liberal provisions as possessing sufficient comprehensive elasticity to enable this to be done."

This is true notwithstanding the evidence may show that the plaintiff had a perfectly good cause of action which was not sued on. The defendant is only required to meet the case stated in the pleadings, and if a right of action not stated in the petition is developed by the evidence, still the defendant is not called on to rebut or refute such testimony or to contest such unpleaded rights. It is enough for him to fight the case brought, and it will be time enough to defend against any other cause of action than that stated in the pleadings, when he is charged therewith, has pleaded thereto and prepared for the trial thereof.

The trial court, therefore, properly excluded all testimony as to the reasonable value of the services performed by the plaintiff from 1874, to 1884, as the manager of his brother's ranch. And if, as some testimony tends to show,

the brothers were partners, neither is entitled to recover for services rendered the partnership, without a special agreement therefor, which there is no proof of in this case, and this evidence was also properly excluded for this reason. For the same reason the court properly instructed the jury, in the second instruction given for defendants, that even if they believed James owned the 640 acres of land, which was sold by Thomas to Corle, James could not recover in this action the money Thomas received therefor. And the same is true as to any stock or household goods which James may have owned and turned in as a part of the ranch. No action has yet been brought for any of these things. They may form the consideration for the express agreement sued on, and are partially alleged to do so, but this is not an action to recover the money Thomas received for the use of James from the sale of any of James's property, real or personal, nor for services rendered by James as manager, partner or otherwise. It is a plain declaration on a specific contract, and upon that the plaintiff must stand or fall. The defendants meet this with a flat denial. They have set up no plea of payment, either in full or in part, nor have they pleaded release, want or failure of consideration, or any other plea by way of confession and avoidance. Neither do the defendants claim that they are entitled to any credits or set-offs. Those allowed by the plaintiff were of their own giving, for without treating them as part payments upon the alleged contract, this action, which was begun nearly twelve years after the contract sued on is said to have been made, would be clearly barred by limitation. Defendants treat these payments as voluntary contributions, made by a rich brother to the support of one not so well off, and assert that Thomas had been contributing substantially the same amount, for the same purpose, every month, for many years before the date of the alleged contract.

This, therefore, leaves the case, just as the trial court

placed it before the jury, that, being a suit upon a special contract the plaintiff can recover only upon proof of the contract as alleged and of performance on his part of the conditions to be kept by him. The case does not fall within the rule that where sufficient facts are proved to warrant a recovery upon some cause of action stated, the plaintiff will not be turned out of court because his proof fails to establish other facts alleged in the petition which were not necessary to the statement of a good cause of action or to the cause of action recovered upon, for the contract sued upon in this case is single, and is so pleaded, with no extraneous averments or surplusage of pleading clouding the issue.

This is an action at law, and there is *some* evidence to sustain the allegations of the petition. The jury have found for the plaintiff. This court has frequently held that in actions at law, where the testimony is conflicting, but there is *any* substantial evidence to support the verdict, this court will not weigh the evidence or interfere with the finding, and we still adhere to that rule. But while there is some evidence in this case, tending to prove the contract sued on, there is absolutely no evidence whatever which supports the verdict, for the verdict is not responsive to the issues nor to any testimony in the case, nor can it be upheld upon any theory of fact or law asserted or claimed by either party to the action, but on the contrary is flagrantly in the teeth of the true law and of the instructions given to the jury by the trial court.

Under the pleadings and proofs, the plaintiff was entitled to recover $12,229.34, with interest at the rate of six per cent per annum from November 20, 1895, the date the suit was filed, or else he was not entitled to recover a cent. There can be no middle ground in the case. Emma Ide's testimony is some evidence to support the cause of action pleaded. The testimony of the other witnesses as to

VOL. 154 mo—23

loose declarations and admissions of the deceased, made long prior to the death was also admissible evidence, but was entitled to very little weight. [Curd v. Brown, 148 Mo. l. c. 92 and cases cited.] But the verdict shows that the jury did not believe any of this testimony, for if they had the verdict would necessarily have been for the full amount claimed, of $12,229.34 and interest. Being for $6,000, it shows that the jury attempted to do "rough justice" between the parties according to principles of right which they set up for themselves, in total disregard of the issues or instructions in the case. Such a verdict can not be sustained upon any theory or principle of law. And the fact that "for one consideration or another," the plaintiff has not complained that he has not recovered as large an amount as the evidence shows he was entitled to, and therefore the defendant will not have to pay as much as he would have had to pay if the verdict had responded to the issues and proofs, does not help the matter. For as long as pleadings and issues and proofs and declarations of law are required for the orderly and just settlement of disputes between citizens, verdicts must be confined to such issues and be governed by such instructions, as without this, courts would be useless and expensive luxuries and legal study a waste of time.

The verdict can only be accounted for on the theory that the jury did not believe the testimony of Emma Ide, nor that of the witnesses who testified to the dead brother's admissions, but that they may have believed that the plaintiff owed 640 acres of the land which sold for ten dollars an acre, aggregating $6,400; and that plaintiff also owned all the cattle and stock on the place, which Corle paid $14,370 for; and that plaintiff owned also household goods, supplies, etc., of the value of $574.50; aggregating $21,344.50, as the value of plaintiff's holdings in the ranch; and that the $12,770.66 which plaintiff admitted he had received, would in round numbers, pay for the cattle, horses, mules, hogs,

household furniture and supplies (although it was $2,173.84 less than the sum those articles brought at the sale of the ranch), and that plaintiff had therefore been paid for everything except his 640 acres valued at $6,400, and therefore the jury gave him $6,000, which was a rough way of adjusting the equities of the parties.

If the jury did not so work out the result reached by them, then the verdict is simply guess-work. In either, or any, event the verdict is not such a verdict as the pleadings, issues, testimony or instructions authorized, warranted or permitted. It is illogical, arbitrary and unjust. It is unjust to the plaintiff because it is less than fifty cents on the dollar of the amount he was entitled to recover if he was entitled to anything, and if the defendants were not liable for $12,229.34, then they were not liable in this action for any amount, and hence it is unjust to make them pay $6,000. It is arbitrary because there is not a particle of evidence in the case which supports it or even suggests such an amount. It is illogical, because upon the case as it was presented to the jury, the plaintiff was entitled to a verdict for $12,229.34 with interest, or else the defendants were entitled to a verdict. It is just as illogical and improper as a verdict for a plaintiff for fifty dollars, when the suit was upon a promissory note for one hundred dollars, and the defendant had pleaded simply *non est factum*, without any modifying or excusatory plea whatever.

But such a verdict illustrates the vice of permitting jurors to settle cases according to their own ideas in disregard of the directions of the court.

The verdict, however, is, perhaps, as easy to understand as many of the features of the case itself. Plaintiff contends that it appears that in 1874 the plaintiff came to Kansas with $3,600. He bought 640 acres of land at $2.50 an acre. He worked ten years, at a compensation of one thousand dollars a year. At the end of that time he owned

land worth $6,400, all the personal property on the ranch worth $14,944.50, aggregating $21,344.50, and his brother owed him $10,000 for services, making his assets $31,344.50. His brother sold all this property and agreed to pay him $25,000 therefor. Assuming that he was willing to throw off $6,344.50 of the value of his assets, the incomprehensible condition is presented that he gave up everything and never took a scratch of the pen to show for it. And more, from 1884 to February, 1891, he let the matter stand in this shape. Then his brother became very sick, and he immediately wanted some evidence of his claim. His brother got well, and lived nearly two years afterwards and still he got no evidence of his claim. The only explanation attempted for this is, that they were brothers and trusted each other. But the fact is that in 1888, when Thomas collected $388 of James's money, and asked him to let him keep it for awhile, he gave James his note for it, bearing eight per cent interest. They were brothers then, too, yet for a trifling amount a written evidence of debt was deemed necessary, while for a sum larger than most men accumulate in a lifetime there was no evidence of debt given. If plaintiff owned the land and the personal property on the ranch and if his brother owed him ten thousand dollars for services, then the twenty-five thousand dollars was $6,344.50 less than the plaintiff was entitled to out of the proceeds of the sale of the ranch. Or if he owned the land and the personal property, and his brother did not owe him anything for services because they were partners, as some of the witnesses say, and because there was no special agreement therefor, then $25,000 was $3,654.50 more than the plaintiff was entitled to of those proceeds. It may be true that the plaintiff was willing to take $6,344.50 less than what was justly due him, or that Thomas was willing to pay James $3,654 more than he was entitled to, but it is utterly incomprehensible and incredible that there should have been no

Cole v. Armour.

written evidence of the contract made then or in the eight years that Thomas lived afterwards, and also that James should have been willing to accept the paltry sum of fifty dollars a month for eight years, when the contract alleged was that he was to get $10,000 immediately, and the remaining $15,000 in a short time.   Fifty dollars a month, is only six hundred dollars a year.   Six per cent interest on $25,000 is fifteen hundred dollars a year.   It is a strain on human credulity to believe that James should not only have permitted the debt of $25,000 to stand for eight years without any evidence of it, but should also quietly accept forty per cent a year of the yearly interest due on the principal. But however this may appear or actually be, if the contract was for $25,000, and James had been paid only $12,770.66 on account thereof, then there was due him $12,229.34 balance thereon, which he should have and a verdict for six thousand dollars deprives him of $6,229.34, which of right was his.   The fact that he does not complain does not make the verdict responsive to any issue or theory of the case. The difference between the plaintiff and defendants was $12,229.66.   The jury, substantially, "split the difference." This they had no right to do.   It produced a result which is without any support in fact or in law.

For these reasons the judgment of the circuit court is reversed and the cause remanded.   All concur.

IN BANC.

MARSHALL, J.—The foregoing opinion heretofore delivered in Division No. 1 is hereby adopted as the opinion of the court in banc.   *Sherwood, Brace* and *Valliant, JJ.*, concur; *Gantt, C. J., Burgess* and *Robinson, JJ.*, dissent.