BESSIE LONG, RESPONDENT, v. F. W. WOOLWORTH AND COMPANY, AP-
PELLANT.—109 S. W. (2d) 85.

Kansas City Court of Appeals.  July 7, 1927.

Burrus & Burrus and Charles V. Garnett for respondent.

Mosman, Rogers, Bell & Buzard for appellant.

REYNOLDS, J.—This appeal comes to us from the Circuit Court of Jackson County at Independence.

On April 20, 1935, the plaintiff filed her petition in such court for recovery of damages in the sum of $3000 for injuries alleged to have been received by her in falling on the floor of the defendant's retail merchandise storeroom located on the north side of the public square at Independence, Missouri, while in said storeroom and while walking on the floor thereof, through the defendant's negligence in maintaining such floor in a dangerous and unsafe condition.

The petition charges the operation by the defendant of a retail merchandise store, commonly called a five and ten cent store, on the north side of the public square in the city of Independence, Missouri, at all of the times mentioned therein. It charges that the defendant caused and permitted the floor of said storeroom to be and remain in a dangerous condition, which condition was well known to its officers and employees and had become so known to them for a period of time prior to the date the plaintiff was injured sufficient within which, by the exercise of ordinarily reasonable care and prudence on their part, to have remedied and repaired the same; that the condition of said floor was so rendered dangerous by the maintenance of a trapdoor therein at or near the front entrances to said storeroom where customers were permitted to walk, with a round hole or depression therein, about two and one-half inches in diameter, which door was of uneven surface with and was above the level of other parts of the floor immediately adjoining it; that, while in

said store on August 28, 1934, for the purpose of making purchases therein and while walking on said floor and while in the exercise of due and proper care for her own safety, she tripped on said door and the hole therein and was caused thereby to fall on the floor and to suffer severe and permanent injuries to her person; that, as a result of said fall and of the negligence of the defendant in maintaining said floor in such dangerous condition, she suffered cuts, bruises, contusions, and lacerations to her body and legs; that the muscles, ligaments, tendons, blood vessels, and nerves of her whole body were bruised, mashed, cut, severed, strained, and lacerated and she was made sick, stiff, sore, and lame thereby; that her condition is lasting and permanent; that she is now sick, stiff, sore, and lame by reason thereof and will continue so to be; that her back was wrenched and twisted and the bones thereof caused to be drawn out of place; that the blood vessels, ligaments, nerves, and muscles thereto attached were strained, torn, cut, bruised, and her back and spine made stiff, sore, and lame; that the sacro-iliac joint was sprained and the blood vessels, muscles, ligaments, and nerves thereof and attachments thereto were strained, torn, cut and bruised and she was made sick, stiff, sore, and lame; that her urinary and genital organs were displaced and the functions thereof impaired; that she has become anaemic by reason of all of said injuries by reason of said fall; that she suffered a severe and permanent shock to her central nervous system and is still so suffering and will continue so to suffer in the future; that all of the plaintiff's conditions and injuries are lasting and permanent.

The answer is a general denial.

The evidence shows, as alleged in the petition, that on August 28, 1934, at the time of the plaintiff's injuries, the defendant maintained and operated a five and ten cent retail store on the north side of the square in Independence, Missouri; that the building in which said store was operated fronted on the square and that it had three entrances through large, double doors, one on the west side as it faced south, one on the east side, and one in the center; that in the floor was a trapdoor which could be raised and closed again; that there was a hole in this trapdoor which extended across into the floor about three-quarters of an inch across each way and about one-half of this hole was in the door and one-half in the floor; that, in passing into said store building from the street through the west entrance, there was a soda fountain and lunch counter along the west wall; that, in front of this fountain and counter, were stools and immediately east of the row of stools was another aisle which extended across the building from the south to the north or rear end thereof; that, immediately beyond this aisle to the east, was a counter upon which was kept toilet and other articles for sale; that east of this

counter was another aisle, the middle aisle of the store, running north and south across it and east of which was a jewelry counter; that, immediately east of the west doorway and along the south wall was a steam radiator, which extended out into the aisle; that the trapdoor in question was at the east end of this radiator; that, upon the morning of August 28, 1934, the plaintiff entered the store through the west entrance with her daughter, Madeline Long, and turned to the right or east in the aisle between the radiator and the notion counter; and that her daughter was immediately in front of her. There is evidence tending to show that, while walking behind her daughter, the plaintiff caught the heel of her shoe in a hole in the floor and stumbled until she fell; that her heel was caught; that it was pulled loose from the sole of her shoe and the cap thereof was left hanging; that she was severely and seriously injured and that her injuries are permanent; that, when she stumbled, she was thrown and the back of her neck was jerked and she got blind and sick and started to sit down when she fell over and hit her left elbow and whirled around; that she was helped by her daughter and a young man in the store at the time to a chair against the wall at the end of the radiator; that she was in the store about fifteen or twenty minutes after she fell and until her son Thad, with the help of another young man, put her in an automobile and took her home; that she was sick at the stomach, was vomiting, had a terrible headache, and was almost blind; that she kept vomiting until she vomited blood; that a chiropractor was immediately called, who gave her treatment; that she was unable to take food or nourishment the night of her injury and was still sick the next day and in bed all day on the day next following; that she continued under the treatment of the chiropractor until Saturday, when she went also to Dr. Stanley Green; that her left hip and side struck the floor when she fell; that there were bruised marks on her left knee and left elbow; that, prior to her injury, she had never had any disturbance in her menstruation periods; that, after her injury, she had a premature period about five days before the regular time; that she menstruated more than usual; that such trouble with her menstruation has been getting worse all the time; that she menstruates oftener and longer; that she has pains in her back and down through her sides. There is evidence that the heel of the shoe which the plaintiff was wearing at the time she was injured was approximately two and one-half inches high; that the width of the cap across the heel was not quite an inch; and that, at the time of her injury, she was about thirty-nine years of age. There is evidence by Dr. Green that she had at the time of the trial become anaemic and had anaemia.

The trial was before the court with a jury. At the conclusion of the plaintiff's evidence, the defendant requested an instruction in

the nature of a demurrer directing a verdict in its favor, which was denied by the court. Again at the close of the whole evidence, the defendant renewed its request for such instruction, which was again denied. The jury returned a verdict for the plaintiff in the sum of $3000, upon which verdict a judgment was rendered by the court in such sum for the plaintiff. From such judgment so rendered, after unsuccessful motions for a new trial and in arrest of judgment, the defendant prosecutes this appeal.

### OPINION.

The defendant assigns error upon the action of the trial court in refusing to sustain its requested instructions in the nature of demurrers offered at the close of the plaintiff's evidence and at the close of all of the evidence; in giving the plaintiff's Instruction No. 1; in admitting and excluding evidence. It also complains that the verdict of the jury is excessive and therefore erroneous.

1.—The first point made by the defendant relates to the alleged erroneous refusal of its requested instructions in the nature of demurrers offered.

It contends that the proof that the plaintiff caught her heel in the hole in question and was thrown thereby to the floor and injured as complained of rests solely upon her statement to such effect and that such statement was a mere conclusion and is without any probative force; that her testimony is that she did not know until two weeks after the accident that she had stepped in any hole; that she did not see any hole in the floor before she fell or immediately after she fell and never saw one until two weeks after she fell; that therefore her statement that her heel was caught in the hole was a mere conclusion; and that such instructions should have been given.

The record does not show that the plaintiff ever at any time said in her testimony that she did not know until two weeks after the accident that she had stepped into a hole. All that she ever said was that she did not see any hole in the floor at the time she fell or prior thereto or immediately thereafter, that she never saw any hole until two weeks after she fell. The defendant bases its statement that she said that she did not know until two weeks after the accident that she had stepped into a hole upon her answer to the question asked her by its counsel upon her final re-cross examination as a witness, as follows: "So for two weeks you didn't know you had stepped in any hole, did you?" to which her answer was, "No, sir." It insists that by such answer the plaintiff said that she did not know. However, to this contention, we cannot agree. The question sought an affirmative answer to the effect that the witness did not know—that is, it sought the answer, "Yes, sir." The witness, however gave the answer, "No, sir," which was a negative answer and was to

the effect that it was not true that for two weeks she did not know. She never at any time said that she did not know that she had stepped into a hole. All that she ever said was that she did not know that there was any hole there until her heel was caught in it, that she had never seen it until two weeks after she was injured. Upon the other hand, she stated that her heel was caught in a hole and that she stumbled and kept stumbling until she fell and was injured. This statement—that her heel was caught in it—is supported by the facts in the record. It was, in any event, not a mere conclusion in the sense that it had no probative force. [Tevault v. Citizens' State Bank (Mo. App.), 183 S. W. 358.] It was supported by the record. It was the statement of a fact. It was not necessary that she should have seen the hole or known that it was there in order that she might have known that she had stepped into it. That she had stepped into a hole, she could have known through her sense of feeling. She could have known that her heel had been caught in such hole from the fact that she could not bring it forward readily and that she was caused to stumble forward and to continue to stumble until thrown to the floor. Moreover, that she did catch her heel in the hole in question was shown by all of the circumstances in evidence from which such fact could be readily inferred. There is evidence that the heel of her shoe was torn loose from the sole and that the heel cap or tap thereon was torn loose and left swinging, ready to fall off. There was testimony that she stumbled forward and continued to stumble and was thrown to the floor and that, as she stumbled and was thrown, the back of her neck was jerked, clearly indicating that her foot had been caught in something. There is evidence that the hole was there and that it was bored in the trapdoor and the floor with an auger three-fourths of an inch in diameter; that the tip of the heel of the plaintiff's shoe was less than an inch in diameter and that the hole was large enough in which to place a heel of the size of that on the plaintiff's shoe and that there was nothing except the hole in, upon, or about the floor in which she could have caught her heel. The record shows that, when she fell, the plaintiff was rendered practically unconscious and helpless and remained in such condition until removed from the place of accident by others, which perhaps accounts for the fact that she did not see the hole at the time. That she did tell her husband, when he came home on the evening of the injury, that she had stepped into a hole in the floor was brought out in her examination by the defendant.

That it is not necessary to prove negligence by direct evidence but that it may be proved from facts and circumstances from which its existence may be reasonably inferred is well established law. It is likewise true that the causal connection between negligence when established and an injury complained of as the result thereof is not

required to be established by direct evidence but may be established by the proof of facts and circumstances from which such connection may be reasonably inferred. [David v. Missouri Pacific R. Co., 328 Mo. 437, 41 S. W. (2d) 179; Anderson v. Asphalt Distributing Co. (Mo.), 55 S. W. (2d) 688.]

In the case at bar, from the evidence of the existence of the hole and the fact that it was of a size sufficient to admit the heel of the plaintiff's shoe and the fact that no other defect was in the floor in which her heel could have been caught and the fact that the heel of her shoe was torn practically from the sole and the fact that the lower part of the heel or the cap was torn loose and from the manner in which her heel was caught and in which she was jerked around and thrown on the floor and the manner in which her neck was jerked, the conclusion is to be reasonably drawn that she stepped with the heel of her shoe into the hole in question and that it was caught therein and that she was thrown thereby and received the injuries complained of. Such circumstances, aside from the statement of the plaintiff that her heel was caught in the hole, make a submissible case for the jury.

The plaintiff's requested instructions were properly ruled, and the cause was properly submitted to the jury.

2.—The second point made by the defendant is that the trial court erred in giving the plaintiff's instruction No. 1.

The instruction is as follows:

"You are instructed by the court that it was the duty of the defendant, F. W. Woolworth Company, to exercise such care as an ordinarily careful and prudent person would ordinarily exercise under all the facts and circumstances you find shown by the evidence, to keep the floor in a reasonably safe condition at the place where the plaintiff claims to have fallen; and

"If you find from the evidence that there was a hole in the floor at the place where plaintiff claims she fell and that said hole rendered said floor unsafe for ordinary use, and was in such condition that it was likely to cause a person to catch a heel therein and to cause a person to slip and fall and be injured while using it in the ordinary way, and if you find from the evidence that the defendant, through its agents, servants and employees, knew of the presence of the hole in the floor, or that said hole had been in the floor for such length of time before the plaintiff fell, that by the exercise of reasonable and ordinary care, could have removed it and made the place reasonably safe for persons using it in the ordinary way; and

"If you further find from the evidence that the plaintiff was using said place and floor in the ordinary manner, and that she caught her heel in said hole and that she fell, and that she was injured, and if you further find from the evidence that said hole in said floor, if

you find such to be the facts, directly caused plaintiff to slip and to fall and the plaintiff received injuries thereby, then it becomes your duty to render a verdict for the plaintiff against the defendant.''

It will be noticed that such instruction covers the whole case and directs a verdict. The defendant criticizes such instruction on two grounds, which may be disposed of together: (1) that it omitted essential elements in the plaintiff's case to entitle her to a verdict in that it omitted to require the jury to find that the defendant knew of the dangerous quality of the condition created in the floor by the hole therein and that it was guilty of negligence in maintaining such condition; (2) that it not only failed to require the jury to find that the facts submitted constituted negligence but in effect told the jury that such facts made the defendant guilty of negligence as a matter of law. [Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S. W. (2d) 323; Mitchell v. Wabash R. Co., 334 Mo. 926, 69 S. W. (2d) 286; Hamilton v. Kansas City Rys. Co. (Mo. App.), 239 S. W. 164; State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984; Greenstein v. Christopher & Simpson Architectual Iron & Foundry Co. (Mo. App.), 178 S. W. 1179; Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488; McCollum v. Winwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693.]

It may be conceded that the rule is that the plaintiff's instruction where it purports to cover the whole case and directs a verdict must submit every fact essential to recovery by the plaintiff and that where the facts present a case about which reasonable minds may differ as to whether or not negligence exists whether or not it does exist is a question of fact for the jury and not a question of law for the court.

The defendant insists that not only should the instruction have required the jury to find that the condition created by the existence of the hole in the trapdoor and the floor in question was dangerous and unsafe; but it should have further required the jury to find that the maintenance thereof was negligence and that the defendant know not only of the existence of the hole but that the condition created thereby was dangerous and unsafe. In this connection, it is well to note that the plaintiff in her petition in effect alleges as a basis of recovery not only the knowledge of the defendant as to the existence of the hole in the trapdoor and the floor and the condition created thereby but alleges that such condition was dangerous and that it was dangerous was known to the officers and employees of the defendant company (which knowledge is necessarily imputed to the defendant) and had been so known to them for a period of time prior to the date of the plaintiff's injury sufficient within which, by the exercise of reasonable care on their part, to have remedied and repaired such condition before her injury. The negligence on

which the plaintiff's case was thus based was not only the maintenance of the hole in the trapdoor and the floor and the condition created thereby but was upon the knowledge of the defendant that the condition created was dangerous for such a period of time prior to the date of the plaintiff's injuries within which to have remedied it, in the exercise of reasonable care, before the plaintiff was injured thereon.

It is a fundamental proposition that the plaintiff must recover on the allegations of her petition and the cause of action stated therein or not at all. [Cole v. Armour, 154 Mo. 333, 55 S. W. 476.] It would therefore appear that the instruction should not only have required the jury to find that the condition created by the hole in question in the floor was a dangerous condition, but it should have required the jury to find that the defendant knew of the dangerous character of such condition and that it failed to remedy it after having had knowledge thereof for a sufficient time to have, in the exercise of reasonable care, done so before the plaintiff was injured.

It is insisted by the plaintiff that the instruction does in fact require the jury to find that the defendant had knowledge of the dangerous condition created by the hole in the floor. She argues that it is first required thereby that the jury find the existence of the hole and that its existence in the floor rendered the floor unsafe and dangerous. It is true that it does require a finding by the jury of the existence of the hole and a finding that the hole rendered the floor unsafe and dangerous. However, it does not require that the jury find that the defendant knew that the existence of the hole rendered the floor unsafe and dangerous. True, it requires the finding that the defendant knew of the existence of the hole; but it might have known of the existence of the hole and still not have known that it made the floor unsafe and dangerous for use. Whether the existence of the hole in the floor in question rendered the floor unsafe and dangerous and whether the defendant was negligent in maintaining the floor with the hole in it were questions about which reasonable minds might differ. The evidence in the record shows that the hole had existed for several years, but there is an entire absence of any showing that any one had ever been injured in walking on the floor by reason of such hole being therein before the time that the plaintiff was injured although it had been used by many. Where the question of negligence or the question as to the existence of a negligent condition is one about which reasonable minds may differ, it is always a question for the jury and never one for the court. Clearly, the instruction should have submitted to the jury the questions of whether or not the condition created by the hole in the floor was a negli-

gent condition and whether or not the defendant was guilty of negligence in maintaining it—that is, whether the defendant had knowledge of the dangerous quality of such condition and that its maintenance by it might be negligent.

The plaintiff insists further that no issue was joined as to the defendant's knowledge of the existence of the dangerous condition of the floor or as to the existence of the hole therein which rendered it unsafe; that the defendant created the defect complained of and the dangerous condition created thereby; and that, therefore, there was no necessity for requiring the jury to find that it had knowledge of such condition.

It is true that the defendant had knowledge of the existence of the hole in the floor. It caused it to be made therein. But that it had knowledge that the condition created by such hole was dangerous is another question. It was an issue in the case under the allegations of the petition and the answer. It became necessary for the plaintiff to show from the evidence the defendant's knowledge of the dangerous character of the condition created and to submit such issue in her instructions asked covering the whole case.

We have examined the authorities cited by the plaintiff in its brief, Armstrong v. Kroger Grocery & Baking Co. (Mo. App.), 78 S. W. (2d) 564, and Murphy v. Fidelity National Bank & Trust Co., 226 Mo. App. 1181, 49 S. W. (2d) 668. Neither of those cases goes to the point now under discussion. The omission of the word "negligence" in an instruction is not always reversible error, as where the instruction submits a series of palpably negligent acts which are negligent as a matter of law. [Prash v. Wabash, R. Co., 151 Mo. App. 410, 132 S. W. 57.] But that is not this case. Whether the act of maintaining the floor with the hole in it was a negligent act in view of the fact that no one had ever been injured thereon before, though many had passed over it, is a question about which the minds of reasonable men might differ. It should, therefore, have been submitted to the jury.

We have examined the other cases cited by the plaintiff in its brief under this head. None of them are in point. In each of them, the facts submitted were palpably negligent acts, about which there could be no difference in the opinion of reasonable minds. It is unnecessary to review them.

The plaintiff insists that the instruction does in fact require a finding that the hole "rendered the floor unsafe" with the knowledge of the defendant. We are unable to find wherein the instruction does so. It cites in support of such contention Borowski v. Loose-Wiles Biscuit Company (Mo. App.), 299 S. W. 424, decided by this court; but such case has no application here for the reason that the instruction in that case required the jury not only to

find that the condition existing was dangerous and unsafe, but that the defendant knew of the unsafe condition, or by ordinary care could have known of it, in time to have remedied the situation.

The instruction complained of required the jury to find that the condition created by the hole in question rendered the floor unsafe and dangerous and that the defendant knew of such hole. It should also have required the jury to find that the defendant knew that the condition created by such hole was unsafe and dangerous. It did not do so. It was erroneous in failing to do so.

3.—The third point made by the defendant relates to the action of the trial court in permitting the plaintiff to testify in explanation of the fact that she had never had any medical treatment for her condition of abnormal menstruation; that she could not afford such treatment and had been unable to pay her doctor for his services in the first instance and did not feel like imposing on him. The record shows that, at the time that the question eliciting such testimony and the answer thereto were made, the only objection interposed by the defendant was that it was immaterial why she had not gone to a doctor. After the answer was made, it further moved that it be stricken out. It has repeatedly been held that an objection that a question is immaterial does not amount to an objection unless it is apparent that it is immaterial. That it was immaterial in this instance does not appear. Moreover, it is a sufficient answer to the defendant's complaint to say that the question and answer complained of were fully justified by the defendant's cross-examination of the plaintiff as a witness. Such cross-examination laid a foundation for such an explanation in the redirect examination. The defendant had, by its cross-examination of the plaintiff, sought to create an unfair inference to the effect that, because she had not sought medical treatment, it was not true that she had been injured in the matters complained of—at least, to the extent to require medical attention. Ordinarily, the admission of such testimony on the plaintiff's part would not be justifiable; but, under the circumstances, it was. The point is ruled against the defendant.

4.—The fourth point complained of relates to the action of the trial court in excluding from evidence the statement of Merrell G. Pratt, the assistant manager of the defendant's store, a witness for the defendant. The defendant insists that, on the cross-examination of such witness, he was questioned by the counsel for the plaintiff as to whether or not he had made such statement and as to whether or not he had refreshed his memory therefrom and that such counsel made a demand for the production of such statement, saying that he desired to use it as a part of the cross-examination; that the plaintiff's counsel examined the witness touching this statement but failed to introduce it in evidence; that the defendant then offered it in evidence and, upon objection thereto, it was excluded. The defendant

complains that its exclusion when offered thus by it was error. The record fails to show that the plaintiff's counsel did anything except to call for the statement .and look at it when produced, other than to ask if it was the statement to which the witness had made reference. The record does not show that there was any attempt made by the plaintiff's counsel to contradict the witness by anything in the statement or that he asked any questions relating to its contents. There is nothing appearing in the record therefore, on the plaintiff's part, to render such statement admissible in evidence. Under the circumstances, when offered by the defendant, it was properly refused as hearsay; and there was no error on the part of the trial court in excluding it. The defendant could not bolster up the testimony of its witness by the statement.

5.—The final and last point made by the defendant is that the verdict of the jury is excessive. In this contention, we cannot concur. The record shows that the plaintiff was about thirty-nine years of age at the time of her injury; that prior to that time she had been strong and healthy; that she received a severe fall which dazed her and rendered her practically unconscious for the time and some minutes thereafter; that she was required to be helped home; that, upon reaching home, she was forced to go to bed and was unable to get out except at times for several days thereafter.; that she suffered from extreme headaches and nervousness; that her condition required treatment; that, when examined by her doctor, abrasions were found on her left knee and swelling and inflammation about the spine in the intercostal spaces around the 8, 9, and 10 vertebra; that she had a bruise underneath her left breast reaching around from the spine, extending over the left ilium and the left hip; that she suffered great pain; that, prior to that time, she had never had any trouble with her menstruation; that that had always been regular but, following her injury, trouble set up; that her menstruation ·became irregular and frequent; that it lasted at times for fourteen days; that she suffered with pain in her back and neck; that her muscles were tender; and that she was suffering with such condition at the time of the trial. Dr. Green testified that, upon his examination of her a short while before the trial, he found· that an anaemic condition had developed, which produced bad results. The evidence tends to show that, at the time of the trial, she was still suffering great pain induced by her injury and by the irregularity of her menstruation and that her injuries are permanent. The verdict was for $3,000; and we are not prepared to say, from anything found in the record, that the same was the result of anything other than the fair and impartial consideration by the jury of the evidence in the record or that, for the injuries sustained, the verdict was excessive. The point is therefore ruled against the defendant. ·

For the error pointed out in instruction No. 1 and the giving thereof, the judgment in this case must be reversed. It is accordingly so ordered that it be reversed and that the cause be remanded for a new trial.

All concur.