HELEN KERBY, APPELLANT, v. ADOLPH SCHINDELL, RESPONDENT.—146 S. W. (2d) 670.

Kansas City Court of Appeals.  January 6, 1941.

*David Waldman* for appellant.

692

*Louis R. Weiss, O. C. Mosman* and *Clay C. Rogers* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $500. However, the court granted defendant a new trial on the ground that it erred in giving plaintiff's Instruction No. One. Plaintiff has appealed.

The facts show that plaintiff, on August 18, 1938, received a third degree burn to her right forearm while buying meat in defendant's meat market in Kansas City, when her arm came in contact with a hot metal plate on the top of defendant's showcase.

The showcase in question was mechanically refrigerated. The temperature was automatically controlled and was kept therein at 40 degrees in both summer and winter. The case was electrically illuminated by means of light bulbs placed in shallow cabinets made by glass inserted between the top of the case and the meat compartment therein. There were four of these cabinets four and one-half inches wide and sixteen inches long and each had a perforated brass plate in the wooden top of the case. These perforated plates afforded radiation for the heat generated by the light bulbs below. The defendant had owned the meat market eighteen months prior to the time when plaintiff was injured but the meat case had been in the store, in the same condition for approximately ten years prior to the time of the casualty.

Plaintiff testified that she went to the meat shop to buy some meat and the butcher, one Puhr, standing behind the meat counter, showed her two pieces and she was burned while pointing to the piece she desired, her bare forearm coming in contact with one of the brass plates on the top of the display case. Defendant was standing nearby and after plaintiff stated that her arm had been burned he said to Puhr: "I told you to keep that covered before somebody got burned." Most of the times when plaintiff had been in the

meat market before there were trays of sweet pickles or peanut butter covering the brass plates, "different kinds of stuff." Plaintiff testified that she did not know that the brass plate in question was so hot as to burn her arm and that no one in the market warned her about the matter.

Parts of defendant's deposition was introduced in evidence. In his deposition he stated that he had felt the brass plates on occasions and that they were "very warm."

Mr. Puhr, testifying for the defendant, stated that he had worked at the meat market for ten years and that in the winter time the doors of the market were not closed until the cold got down to ten degrees or under and the butchers used the brass plates in the winter time to warm their hands; that they would place their hands "right down on it" but none of them was ever burned and that he had never heard of any complaint of any one being burned by any of the brass plates.

Defendant testified that each cabinet under the brass plates was equipped with two twenty-five watt light bulbs; that the plates were not "very warm;" that "they were warm but not hot enough to burn anybody;" that they were not dangerous; that he did not know or did he ever hear of anyone getting burned on one of the plates and did not know that the plates would burn a human arm or that they were in any way dangerous.

Plaintiff's Instruction No. One told the jury that if it found that the brass plates were hot and such condition rendered them "unsafe and dangerous to persons coming into contact therewith" and plaintiff came into contact with one of them and burned her arm "and if you further find and believe from the evidence that the defendant knew or by the exercise of ordinary care could have known that said brass plates or strips along the top of said showcase were hot, if so, in sufficient time prior to the occurrence referred herein to have remedied the same, if so, and defendant could by the exercise of ordinary care have warned plaintiff of said unsafe and dangerous condition (if you find that said condition was unsafe and dangerous) and have thus and thereby prevented plaintiff's injuries, if you so find, and that defendant negligently failed so to do, if so, and that as a direct and proximate result of defendant's negligence, if any, plaintiff's right arm was burned and injured, if so, then your verdict should be for the plaintiff and against the defendant."

Plaintiff's Instruction No. Two told the jury: " 'Negligence' and 'Negligently' as used in these instructions, means the failure to exercise ordinary care. 'Ordinary care' as used in these instructions, means that degree of care exercised by an ordinarily prudent person under like or similar circumstances.' "

Defendant, in his brief, urges that plaintiff's Instruction No. One constituted error for the reason that, although plaintiff was a business invitee defendant was not an insurer of the safety of his customers

but was liable to plaintiff only upon a finding, by the jury, that the plate was dangerously hot and that defendant had actual or constructive notice of its dangerously hot condition a reasonable length of time before the occurrence of the casualty to have offered him an opportunity to remove or warn of its presence. The duty thus stated by the defendant is not disputed by the plaintiff and we may assume that it is properly set forth by him. However, defendant says that the instruction nowhere requires an affirmative finding by the jury that defendant had knowledge, either actual or constructive, of *the dangerous condition* of the brass plate in question and that the instruction, by the use of the words "that defendant knew . . . that said brass strips or plates . . . were hot" does not submit that he knew that they were dangerously hot.

The words quoted, standing alone, do not submit knowledge of defendant of the dangerous condition of the plates and we may assume that the instruction would have been erroneous if they were the only words in the instruction bearing on the subject. However, the instruction, in its first part, requires the jury to find that the plates were *dangerously hot* and after the words, last quoted from the instruction, the jury was required to find, that the defendant had the opportunity to remedy the condition and have warned plaintiff "of said unsafe condition" and *"negligently failed to do so* and as a direct and proximate result of defendant's negligence" plaintiff was injured.

It is difficult to see how a jury, under all of the facts in this case, could find that defendant could have negligently failed to warn plaintiff of the unsafe and dangerous condition unless he knew, or by the exercise of ordinary care, could have known of such unsafe and dangerous condition. That part of the instruction, submitting negligent failure to warn plaintiff of the unsafe and dangerous condition, standing by itself, no doubt was sufficient to submit that defendant had actual or constructive knowledge that the plate was dangerous hot. [Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 923, 924; Simmons v. Kansas City Jockey Club, 334 Mo. 99, 109; Kamer v. Mo. Kans. & Texas R. R. Co., 326 Mo. 792; Hulsey v. Quarry Constr. Co., 326 Mo. 194; Berberet v. Elec. Park Amusement Co., 319 Mo. 275, 279.]

So it appears that we have here an instruction which, we may assume, at one place, falls short of submitting knowledge of defendant of the fact that the plate was hot, yet, not dangerously hot and, in another place, submitting knowledge of the dangerously hot quality of the plate. In other words, the instruction is ambiguous. In such circumstances, even though the instruction covers the entire case and directs a verdict, we look to the other instructions to see if any of them clarify plaintiff's instruction. [Nephler v. Woodward, 200 Mo. 179; McDonald v. Kansas City Gas Co., 332 Mo. 356; Jenkins v.

Mo. State Life Ins. Co., 334 Mo. 941; Larey v. Railroad Co., 333 Mo. 949.]

In this connection we find that the court gave defendant's Instruction "F," which reads as follows: "The court instructs the jury that the burden of proof is upon the plaintiff to prove to the reasonable satisfaction of the jury, by the preponderance or greater weight of the credible testimony, that the defendant was negligent and that plaintiff's injuries, if any, were the direct result of such negligence, if any, and unless she has so proved, the jury must find for the defendant and against the plaintiff," and his Instruction "G," which told the jury that if it found, among other things, "that the brass plate on top of said showcase with the electric light bulbs in said showcase under said brass plate was reasonably safe, or that there was nothing about the same to indicate to a person of ordinary care and prudence that the same was dangerous and unsafe to patrons of defendant, and that defendant had no knowledge that said plate was dangerous and unsafe, if so, then your verdict must be in favor of the defendant and against the plaintiff."

Defendant's Instruction "G" was probably more favorable to him than the facts and the law warranted, yet, the jury, in reading all of the instructions together, would not get the impression that they should find against the defendant in the absence of any knowledge on his part, of any kind, of the dangerous condition present. We have examined the case of Long v. F. W. Woolworth Co., 109 S. W. (2d) 85, cited by the defendant, and find that the instruction, held bad in that case, was wholly different from those in the case at bar.

However, defendant insists that the court properly granted him a new trial because his instruction in the nature of a demurrer, offered at the conclusion of the whole case, should have been granted. In this connection defendant says that there was no evidence tending to show how long the dangerous situation existed or that defendant had any knowledge, actual or constructive, that the plate was dangerously hot. There is no merit in this contention.

Defendant, himself, states in his brief: "This showcase, equipped as aforesaid, had been maintained and used in the same manner for many years prior to the occurrence upon which this litigation is predicated." This is the undisputed evidence. Defendant operated the meat market and meat case eighteen months prior to plaintiff's injury. While, it is true that there is a dispute in the evidence as to whether the plate was dangerously hot, yet, there is ample in the record, from which the jury could find, that it was. There is no question that this evidence was sufficient to establish, at least, constructive knowledge to defendant of the dangerous condition. [Stewart v. Geo. G. Peck D. G. Co., 135 S. W. (2d) 405.]

Aside from this, plaintiff testified that when she exclaimed that her arm had been burned defendant said: "I told you (Puhr, the meat

cutter) to keep that covered before someone got burned.'' Defendant, himself, testified that, on occasions, prior to plaintiff's injury he had felt the plates. From these circumstances the jury could readily find that defendant had actual knowledge of the condition.

However, defendant insists that the court properly granted the motion for a new trial because it erred in excluding certain offered testimony of defendant's witness, Hawthorne.

Hawthorne was a chemist and experienced in making tests for temperature or heat. Defendant offered to prove by the witness that on the day of the trial, December 8, 1939, he tested the showcase in controversy by placing a testing thermometer upon one of the plates and left it there ''a sufficient length of time beyond which it would not register any higher than 120 degrees and that 120 degrees of temperature will not burn a person'' and that the witness rested his hand upon the plate ''a sufficient length of time . . . to secure the maximum temperature and it would not burn'' his hand and that the condition of the case was the same when the witness made the test as testified to by plaintiff.

The court excluded the offer because it had theretofore excluded, upon defendant's objection, an offer of plaintiff to prove that, since plaintiff's injury, there had been boards placed over the plates so that a person's arm could not come in contact with the latter. The court in excluding the proffered testimony of the witness, Hawthorne, stated: ''I think it is entirely inconsistent with your (defendant's counsel's) previous objection. You objected to showing a changed condition and now you say that you are testing it and the inference is that it has been changed from what it was before. Objection sustained.''

It has been held that the trial court is vested with a judicial discretion in ruling upon offers of experimental evidence. [See Lynch v. Mo., Kansas & Texas R. R. Co., 61 S. W. (2d) 918, 921.] Defendant urges, in effect, that the court did not even attempt to exercise its discretion in ruling on the offer. We need not pass upon this last point raised by the defendant but need only to say that whether the plate in question was mildly hot or dangerously hot was susceptible to be shown by the simpliest character of testimony and it is difficult to see how any test by an expert in thermometry would be any more potent than the placing by laymen of their hands on the plates. There was much evidence, on the part of the defendant, off a direct nature, that the plates would not burn human flesh and the proffered evidence was merely cumulative. We are enjoined by section 1062, Revised Statutes 1929, not to reverse a judgment for immaterial errors and we think that, if any error was committed in excluding the evidence in question, it was harmless. [Homan v. Mo. Pac. R. R. Co., 334 Mo. 61; Clark v. Reising, 341 Mo. 282; Fischer v. Western & Southern Indemnity Co., 110 S. W. (2d) 811; White

698

v. Hasburgh, 124 S. W. (2d) 560; Hicks v. Vieths, 46 S. W. (2d) 604; Kimberling v. Wab. Ry. Co., 337 Mo. 702; Nestlehut v. City of De Soto, 202 S. W. 425, 427; Kingston v. Roberts, 175 Mo. App. 69.]

The judgment is reversed and the cause remanded with directions to the trial court to reinstate the verdict. All concur.