Frank GATZKE, Plaintiff-Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Respondent.

No. 46742.

Supreme Court of Missouri,
Division No. 1.

March 9, 1959.

Rexford H. Caruthers, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, Jack H. Ross, Gross, Jones, Blumenfeld & Ross, St. Louis, for appellant.

Robert C. Ely, St. Louis, for respondent.

**VAN OSDOL, Commissioner.**

In this action for personal injuries under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) plaintiff had verdict and judgment for $18,500, but the trial court granted defendant a new trial on the specified ground of errors in excluding evidence proffered by defendant. Plaintiff has appealed from the new-trial order.

Plaintiff's case was submitted to the jury on the theory of negligence of defendant in failing to provide plaintiff with a reasonably safe place in which to work. More specifically, the submission in plaintiff's principal verdict-directing Instruction No. 1, in the respects as pertinent here, was that plaintiff, a locomotive engineer, was required in the performance of his duties to go upon the catwalk of one of defendant's locomotives to inspect an oil gauge located beyond a narrow doorway through the right side of the hood or housing of the engine; that the catwalk was approximately 18 inches in width and had no guard rail on its outer side; that the oil gauge was located approximately 40 inches inside the doorway; that the gauge was turned forward toward the front of the locomotive so that plaintiff was obliged to direct his vision toward the rear of the locomotive in observing the glass aperture or "sight glass" in the casing of the gauge; and that plaintiff had "to lean considerably forward, to twist his head and maintain his weight on the ball of his right foot, and that in attempting to return to an erect position on

said catwalk it was necessary for plaintiff to move sideways and backward, and that in so doing he did not get a firm footing on said catwalk and thereby lost his balance and fell from said catwalk against a building and thereby sustained injury * * *."

In order to understand the contentions relating to the questions of error of the trial court in awarding a new trial it is necessary to examine some of the evidence.

As was submitted in Instruction No. 1, there was evidence tending to show that plaintiff, in performance of his duties, had gone on the catwalk of defendant's Diesel Switcher No. 1216, a locomotive manufactured by General Motors. The locomotive was "parked" with its right side near a brick building. The locomotive was equipped with a handrail which was set on the side of the housing or hood above a panel of doors. The panel of doors—each single door 17¾ inches wide—was along the side of the housing or hood of the locomotive, and permitted the operating machinery within the housing to be inspected and serviced. There was no guard rail or handrail on the outer side or edge of the catwalk of this locomotive. As stated, the handrail was set above the panel of doors; was fixed to the hood of the locomotive; but was less than 66 inches above the catwalk. Plaintiff in testifying substantiated the circumstances of his injury in effect as hypothesized in his verdict-directing Instruction No. 1.

In his case-in-chief plaintiff produced a photograph (Plaintiff's Exhibit No. 2) of an "Alco" switcher, a locomotive manufactured by the American Locomotive Company, "around fifteen to twenty" of which are used by defendant in its yards. This switch engine had a handrail or guard rail of such height as would strike an employee at the waistline if he were standing on the catwalk. The handrail or guard rail was fixed to standards which were attached to the outer edge of the catwalk. Defendant objected to the introduction of the exhibit on the ground that the photograph "does not show the condition involved in this case. It is not a picture of the engine involved." There were several colloquies concerning the admissibility of this exhibit. But plaintiff used the exhibit in interrogating witnesses, and the trial court ultimately, at the conclusion of plaintiff's evidence, admitted the exhibit into evidence.

■ Defendant in undertaking to prove its defense called a witness, Max Ephraim, Jr., who testified that he, a mechanical engineer, was in charge of the locomotive design for Electro-Motive Division, General Motors Corporation. During the interrogation of this witness, the trial court sustained plaintiff's objections to questions and, upon plaintiff's objections, denied and excluded offers of proof. The evidence excluded may be considered as if stated in four separate offers although the evidence tendered was somewhat variously intermingled in the several proffers as made by defendant's counsel; however, the evidence was treated by the trial court as if proffered in four separate offers in ruling adversely at the time of the offers and in its specifications of error in the exclusion of the evidence in sustaining defendant's motion for a new trial. These four offers of proof were as follows,

(1) "I want to make the * * * offer of proof by this witness, his company is the largest planner of diesel engines in the United States and, as far as I understand, in the world, * * *."

(2) "* * * that there are in service over three thousand locomotives of the same design as the locomotive 1216, which do not have the handrail on the outside of the catwalk."

(3) "The Defendant offers to prove by this witness that twice a year, he and other men from his company meet with the Interstate Commerce Commission and go over the various specifications of their locomotives to determine whether they meet with the requirements of the Interstate Commerce Commission, including the location of the handrails. * * *"

(4) "* * * it would be impossible to put a handrail attached to the hood of the locomotive ("Alco" switcher, shown in Plaintiff's Exhibit No. 2) within the required sixty-six inches because the doors of that locomotive are higher than sixty-six inches and could not be opened if the handrail were put alongside the locomotive, therefore the handrail must be put on the outside."

The trial court overruled plaintiff's objection to defendant's offer to prove that the Interstate Commerce Commission's regulations require that a handrail be placed above the catwalk of any locomotive engine, "and that that handrail cannot be any higher than sixty-six inches above the catwalk." A witness for defendant was allowed to testify relating to the Commission's regulations, and defendant was permitted to show that the doors, opening outwardly, in the sides of the housing of the Alco switcher would not clear a handrail of height 66 inches or less if fixed on the side of the housing as on defendant's locomotive No. 1216.

There was evidence that General Motors also manufactures diesel engines with handrails on the outside of the catwalks. These are on special order and are on those road switchers which are used on "long distance hauls" or "road service" or "multiple" operations during which the operating employees may be required to pass along the catwalks while the locomotives are in motion. Switchers thus constructed represent 5.6 per cent of the switchers built by General Motors. It was said that locomotives such as defendant's No. 1216 are of "yard switcher" design. There was evidence that defendant operates "around thirty General Motors engines" in its switchyard.

Turning now to plaintiff-appellant's contentions—it is urged that the trial court had no discretion in ruling upon defendant's objections to the offers of proof (Nos. 1 and 2). It is said that the evidence was inadmissible; that its admission would have been erroneous as a proposition of law; and that since the trial court correctly excluded the proffered evidence, the trial court had no power or discretion to grant a new trial on the ground of excluding such evidence—hence, says plaintiff, the order granting a new trial was erroneous. See now Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577, cited by plaintiff, in which the trial court had correctly excluded a hospital record, produced by plaintiff Gray, on the ground that the record had not been shown to be a "business entry" within the purview of The Uniform Business Records as Evidence Law. It followed that the trial court erred in granting plaintiff Gray a new trial on the specified ground of error in excluding the record.

Further, it is said by plaintiff that these offers of proof (Nos. 1 and 2) were tendered by defendant in an apparent effort to bring itself within the rule of conformity to general usage and custom as evidence of due care. And, indeed, this must concededly have been the same or related purpose of plaintiff's introduction of his Exhibit No. 2, picture of the Alco switcher. As stated by plaintiff's counsel in offering the exhibit, "It's the plaintiff's purpose to show locomotives which have already been mentioned in evidence as being customarily used by defendant at the time of the accident, that the particular guard rail, which is illustrated in Plaintiff's Exhibit No. 2, is of such a height that it would meet plaintiff's person near his waistline, and can thereby fully be shown that it would have prevented him from falling had there been one on the particular locomotive he was on * * *." In introducing Plaintiff's Exhibit No. 2, the picture of the Alco locomotive with handrail on the outside of the catwalk, plaintiff was undertaking to induce the jury to indulge the inference that locomotive No. 1216, since it had no handrail on the outside of the catwalk, was not reasonably safe.

■ It is said that usual practices, usage or customs may, in a given case, be shown as evidence of due care, although they are not the standards of due care, neither do they conclusively demonstrate due care. Specifically, it may be said that the exercise of due care requires precautions which a reasonably prudent employer would have taken in given circumstances, even though other employers may not have taken such commensurate precautions. What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not. Grosvener v. New York Cent. R. Co., 343 Mo. 611, 123 S.W.2d 173; Cleghorn v. Terminal R. Ass'n of St. Louis, Mo. Sup., 289 S.W.2d 13; Texas & Pac. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905. But, as stated, usual practices, usage or customs may, in given cases, be shown as evidence of due care.

There could be little doubt that the facts that General Motors, the largest planner of diesel locomotives in the United States, as stated in the offer of proof, which planner of diesels has manufactured and there are in service, according to the proffer, more than three thousand locomotives of the same design as No. 1216, would have a relevancy to the main issue of defendant's negligence and if the facts were admissible they could be properly considered by the jury as a circumstance tending to show that, even without handrails on the outside of its catwalks, the locomotive No. 1216 was reasonably safe with its handrail set alongside and attached to the upper housing of its engine; and, if admitted into evidence, these facts would tend to counter and refute the inference favorable to plaintiff supported by Plaintiff's Exhibit No. 2. In this connection, we have examined Satterlee v. St. Louis-San Francisco Ry. Co., 336 Mo. 943, 82 S.W.2d 69, 78, which case involved an issue of the safety of an engine with respect to handholds on top of the tender, and in which case this court reversed a judgment for plaintiff and remanded the cause because of error in plaintiff Satterlee's Instruction No. 2. This court, in passing, said the trial court also went too far in giving another instruction at plaintiff's request in which instruction the jury was told not to consider for any purpose any of the evidence tending to show that the locomotive and tender in question was manufactured by a large standard builder of locomotives used by railroads generally. It was said, "This (latter) instruction was too broad, and excluded evidence proper for the jury's consideration."

■ It is true, as stated by this court in Wood v. St. Louis Public Service Co., 362 Mo. 1103, at page 1117, 246 S.W.2d 807, at pages 816–817, that where the evidence sought to be introduced is of a collateral fact or facts which may have relevancy and probative value upon an issue being tried, nevertheless the objection to the admissibility of this type of evidence by reason of the consideration of other factors may outweigh the value of the proffered evidence in a given case. For example, to admit the evidence may constitute unfair surprise to an opponent, may tend to confuse the issues, or may involve the unwise consumption of time in trial; in which event or events the trial court in its discretion may be justified in excluding it. But it must be obvious that if, in the instant case, the trial court was intending to act in the exercise of discretion in excluding the evidence tendered in the two stated offers, the exclusion of the evidence was prejudicial to defendant who was thus deprived of the resort to this evidence in refutation of similar evidence which the trial court had admitted upon overruling defendant's objection to Plaintiff's Exhibit No. 2.

Plaintiff has further contended the offers Nos. 1 and 2 were of evidence inadmissible because the attention of the trial court was not specifically directed to the purpose of the proffered evidence; but here the specific issues of defendant's negligence were clear and the record discloses that colloquies of counsel and the trial court in

connection with plaintiff's introduction of Exhibit No. 2 and in connection with defendant's offers of proof must have made known to the trial court the purpose of the evidence proffered and the manner in which it could affect the controverted issue of negligence in failing to provide a reasonably safe place to work.

Plaintiff's contentions are without merit in urging that the proffers were insufficient because the evidence proffered did not include the fact that the other three thousand locomotives in switcher service were operated in the same or similar circumstances by persons in the same line of business as those of the particular operation involved here (Schmidt v. Union Electric Light & Power Co., 319 Mo. 102, 3 S.W.2d 384); and that the proffers did not include evidence that in these other locomotives designed by General Motors the sight glasses of the oil gauges were turned as was the oil gauge of switcher No. 1216, requiring employees to assume postures as did plaintiff when he was inspecting the oil gauge of No. 1216. We think the issue of the position of the handrail in this case was the principal although not the sole supporting factual issue of the ultimate issues of defendant's causal negligence and consequent liability; and the term "same or similar circumstances by persons in the same line of business," it would seem, refers in this case to the circumstances of the operation of switchers in which the operating employees may have occasion in the performance of their duties in servicing or repairing engines to stand upon or move along a catwalk; that is, we think it was not necessary to the admissibility of the evidence proffered in offer of proof No. 2 to include the statement that the three thousand engines alluded to had sight glasses of oil gauges turned toward the forward ends of these locomotives. It is further argued that defendant's witness Ephraim was not shown to be qualified to testify of the number of locomotives (designed as was No. 1216) which are in service. This argument apparently is an afterthought. Defendant did not object to

the qualification of the witness Ephraim from the standpoint of his means of knowledge of the number of locomotives like switcher No. 1216, although plaintiff did object to the qualification of the witness to testify as to other matters. And we have the further view that the evidence proffered here could not have reasonably invited the jury to "shift" to General Motors the nondelegable duty of defendant to exercise reasonable care in providing a reasonably safe place to work, as did the city ordinance, and the city's contract with the street railway company in Fosmire v. Kansas City, Mo.Sup., 260 S.W.2d 252.

However, it is not essential to the decision here that it should be decided whether or not the evidence tendered in offers of proof Nos. 1 and 2 was erroneously excluded had such evidence been tendered in the absence of the introduction of Plaintiff's Exhibit No. 2. Defendant had objected to the introduction of the Exhibit No. 2, and although, in theory, defendant was protected by its objection if it desired to rely on it and await an appeal, nevertheless, Exhibit No. 2, from which an inference could be drawn adverse to defendant on a factual issue determinative of the case, was before the jury, and we believe that in fairness and as a matter of right, defendant, if it desired, should have been permitted, within reasonable bounds, to introduce similar but counter or refuting evidence such as proffered in offers of proof Nos. 1 and 2. The exclusion of this evidence tendered by defendant was unfair and plainly prejudicial in denying defendant a refutation by evidence of like character as had been introduced by plaintiff in supporting the stated and determinative issue of negligence. If it is assumed that the offers Nos. 1 and 2 were of inadmissible evidence as plaintiff contends, then it may be assumed that Plaintiff's Exhibit No. 2 was likewise inadmissible, and we think that as a matter of right defendant should have been permitted to introduce the evidence as proffered in refutation of the inference which the jury could and possibly did draw from Plaintiff's

Exhibit No. 2. We hold the trial court did not err in granting defendant a new trial on the specified grounds of error in excluding the evidence proffered in offers Nos. 1 and 2. See now Jones v. Werthan Bag Co., Mo.Sup., 254 S.W. 4; Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859; Ramos v. Ramos, Mo.App., 232 S.W.2d 188; Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780; Enyeart v. Peterson, 184 Mo.App. 519, 170 S.W. 458; Long v. F. W. Woolworth Co., 232 Mo.App. 417, 109 S.W.2d 85; Vol. I, Wigmore on Evidence, 3d Ed., § 15, p. 304. See also Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820.

Since we cannot know what turn the evidence may take in its development upon retrial, we shall not prolong this opinion by examining the question of whether or not the trial court erred in excluding offers of proof Nos. 3 and 4, and whether the trial court was or was not consequently justified in granting a new trial on the specified grounds of error in excluding the evidence proffered therein. Neither shall we examine defendant's contention, urging as an additional ground supporting the trial court's order granting the new trial, that the trial court erred in excluding an exhibit, Defendant's Exhibit A, a photograph of plaintiff standing on the catwalk of locomotive No. 1216. We assume the parties' counsel and the trial court will study these other contentions of error which are urged here and, upon retrial, will proceed in the introduction of evidence tending to support and refute plaintiff's claim in a manner that will obviate prejudicial error.

The order awarding defendant a new trial should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.