MILTON I. SHUBERT et al., as Executors of LEE SHUBERT, Deceased, Respondents-Appellants, v. LAWRENCE S. LAWRENCE et al., as EXECUTORS of LEE SHUBERT, Deceased, et al., Respondents.

MILTON I. SHUBERT et al., as Executors of LEE SHUBERT, Deceased, Respondents-Appellants, and UNITED STATES OF AMERICA, Intervenor-Appellant, v. LAWRENCE S. LAWRENCE et al., as Executors of LEE SHUBERT, Deceased, Respondents, and MORGAN GUARANTY TRUST COMPANY OF NEW YORK et al., as Executors of JACOB J. SHUBERT, Deceased, Appellants-Respondents.

First Department, March 30, 1967.

*Francis A. Brick, Jr.* of counsel (*Douglas V. Lewis, Helmut F. Furth, Peter J. Gartland, Charles E. Fedden* and *Charles H. Weinberg* with him on the brief; *Donovan Leisure Newton & Irvine; Perkins, Daniels & McCormack; Milton R. Weir* and *A. M. & C. H. Weinberg,* attorneys), for respondents-appellants.

*James N. Vaughan* of counsel (*Gerald Schoenfeld* and *Bernard B. Jacobs* with him on the brief; *Vaughan & Lyons* and *Gerald Schoenfeld* and *Bernard B. Jacobs,* attorneys), for appellants-respondents.

*Alvin H. Meadow* of counsel (*Dawnald R. Henderson* with him on the brief; *Robert M. Morgenthau, United States Attorney*), for intervenor-appellant.

STEUER, J. The partnership of Lee and J. J. Shubert terminated with the death of Lee on December 25, 1953. The partnership, originally engaged in theatrical productions, was at that time largely in the business of operating real properties. Two of these were owned by the partnership. The 99 others were owned by corporations whose stock was owned either by the partnership or by corporations controlled by the partnership.

The earlier business activity of the partnership was reflected in the fact that 35 of the properties were theatres.

Lee Shubert's will provided that his executors should be guided by the wishes of the surviving partner, his brother J. J. Shubert, in the administration and disposition of all properties owned by the partnership, and that as long as his brother should live there should be no forced liquidation or partition of any of these properties.

Two of the four executors determined to seek an accounting of the partnership assets. The other two deemed it inadvisable at the time, due to the restrictions in the above-cited provision in the will. An action was started in November, 1954, in which the two dissenting executors were joined as defendants. This court decided (1 A D 2d 654, affd. 1 N Y 2d 914) that the estate was entitled to an accounting, whereupon the dissenting executors joined with their fellows as plaintiffs and the accounting proceeded before Hon. EDWIN WEISL, the Referee appointed by this court. During the course of the proceedings, on December 26, 1963, J. J. Shubert, the accounting partner, died, and his estate was substituted for him.

The Referee reported, finding the value of the partnership assets as of the date of the termination of the partnership. Plaintiffs moved at Special Term to confirm the report and for judgment for the amount found to be due their testator's estate, with interest thereon pursuant to section 73 of the Partnership Law. Special Term granted the motion to the extent of confirming the Referee's report and awarding interest at the rate of 6%, but denied the application to enter judgment, directing that there be further proceedings to determine the method of payment.

Both parties appeal. Plaintiffs object to the failure of the court to grant their application for judgment. They also object to certain underlying findings of value by the Referee. Their position as stated is, however, that should this court direct the entry of judgment, they would waive any such objection and accept judgment on the basis of the Referee's findings. The defendants' appeal raises several objections to the findings of the Referee and to Special Term's determination that interest was to be awarded at 6%.

Initially the Referee was confronted with the problem of the theory on which the partnership assets were to be evaluated. Ordinarily, the value of a business is its investment value based on a capitalization of its return. However, the value of a concern whose property consists of real properties is determined by the value of those properties. The Referee gave due con-

sideration to both methods, and we find no error in the weight apportioned to both. Defendants offered no independent testimony as to the value of any property and their claims in that regard have no support in the record.

In addition, defendants raise objection to four items in the account. As to two of these, discussion is hardly merited on the record. The finding that the Washington Theatre transaction was a partnership enterprise is amply sustained by the proof. The inclusion of real estate tax refunds for periods antedating the termination of the partnership, though received after, is admittedly proper. Defendants' contention that the cost of obtaining these refunds and the income taxes attributable to them should be deducted is likewise proper, but defendants failed to furnish the Referee with any proof of what the items amounted to.

Defendants next object to the inclusion by the Referee of two bank accounts in the name of J. J. Shubert totalling $80,962.37. These accounts never appeared on the partnership books. The Referee relied on certain provisions in the partnership agreements. These agreements, five in number, complement the testimony given by J. J. Shubert and present an accurate picture of the relationship of the partners which provides what we consider to be the only tenable resolution of this and of the succeeding issue to be discussed. J. J. Shubert testified that upon the death of their elder brother, Sam, Lee took over the active management of the partnership affairs and he would brook no interference from his brother or anyone else. This attitude resulted in long periods of estrangement, during some of which the brothers refused to so much as speak to each other. This explains the so-called five agreements. None of them is a formal agreement. They are either memoranda or letters stating that all properties in whosoever's name (especially including relatives of each) is partnership property. While the word "money" appears frequently, there is only one reference to bank accounts and that is specifically to Lee's bank accounts. Furthermore, it appears that both brothers had safe deposit boxes to which the other had no access and the partnership has had a safe-deposit box to which both had access. It appears quite clear from the above that the memoranda of agreement were occasioned by particular developments and meant to insure that partnership assets could not be concealed by either partner from the other, and that the use of corporate or personal nominees was not to frustrate that purpose. On the other hand, neither the agreements nor the supporting testimony leads to the belief that neither of these partners was ever

to have any personal funds in which the other did not share. The reverse is indicated. However, it remains to be considered whether the proof indicates that these particular bank accounts fall in the category of personal funds. Transcripts of the accounts were not furnished to the Referee, but one item of testimony supports his conclusion. J. J. Shubert testified that he did not even know of the existence of these accounts. Had they been his personal funds, he must have. We therefore agree that these accounts were properly included in the partnership assets.

The remaining item consists of marketable securities in a brokerage account. It appears that both brothers had brokerage accounts with the same broker, in which each traded individually. In 1940 these accounts were transferred to a joint account in the name of both brothers. Five years before, Lee, whose account contained by far the larger amount of securities, agreed that any brokerage account which he controlled was to be considered partnership property. The securities in the account were carried on the books as partnership property. There can be no real dispute therefore that this joint account was partnership property. But we do not agree with the conclusion of the Referee that this fact mandates that the value of the securities be included in the partnership accounting. When the joint account was opened, an instrument was signed by the brothers, providing that the securities were owned by both as joint tenants with the right of survivorship. From all that appears in the record, this designation of the account was neither inadvertent, *pro forma*, or with any intent to conceal the true intent of the signatories. Partners may provide for any disposition of partnership assets on termination of the partnership that they wish, including transfer by survivorship (*Lanier* v. *Bowdoin,* 282 N. Y. 32; *Smith* v. *Furst,* 186 App. Div. 452; *McKinnon* v. *McKinnon,* 56 F. 409; *Matter of Karlinski,* 180 Misc. 44, see, also, *Balafas* v. *Balafas,* 263 Minn. 267, where an almost exactly parallel agreement was given effect). Having done so, these securities became the property of J. J. Shubert and should not have been included in the account.

The next question to be considered is the rate of interest to be applied to the balance of the account as stated between the date of termination of the partnership and entry of the judgment. Special Term, as indicated, fixed this rate at the legal rate of 6%. Section 73 of the Partnership Law specifies: " When any partner retires or dies, and the business is continued * * * without any settlement of accounts * * * he or his legal representative * * * may have the value of his

interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at * * * the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership''. It will be observed that no rate of interest is specified unless the words '' as an ordinary creditor '' are to be interpreted as prescribing the legal rate.

We deem defendants' preliminary objection to the allowance of any interest, on the ground that the business of the partnership was not continued but only that the partnership estate was being liquidated, to be not well taken. The properties continued to be operated and, while there were some dispositive transactions, the finding of the Referee against this contention is sound. The objection to the finding of Special Term on the fixation of the legal rate rests on a firmer foundation. We do not believe that the legal rate is mandated by the Legislature, and we reach that conclusion both from the wording of the statute and the application of general rules of law. The words '' as a general creditor '' apply to the method of collecting the value of the deceased partner's interest, especially vis-a-vis creditors of the partnership and creditors of the individual partners.

For many years in our law it has been recognized that in partnership accountings the allowance of interest was a matter for decision on equitable principles. '' There is and can be no fixed rule in settling partnership accounts in respect to interest '' (*Johnson* v. *Hartshorne,* 52 N. Y. 173, 177). Where interest is allowed, it is upon principles that prevail in equity (*Blun* v. *Mayer,* 189 N. Y. 153, 158). And in *Roth* v. *Zaidenberg* (272 App. Div. 726, 728, affd. 298 N. Y. 809) this court stated: '' In settling partnership accounts with respect to interest its allowance necessarily depends upon the circumstances of each case and the right to interest does not always depend on contract or rules of common law but upon principles that prevail in courts of equity.'' True, these quotations relate to the allowance rather than the rate of interest. But they do establish that questions regarding interest are of an equitable nature. That being so, the provisions of CPLR 5001 (subd. [a]) apply: '' except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.''

The exercise of that discretion is to be determined by the particular facts of each case and we believe the following to be of controlling import. Plaintiffs' testator made his testamentary direction in the belief and expectation that the rentention

of the properties in the discretion of the surviving partner would be to the best interest of all, including his own estate. There is nothing to show that he was wrong in this respect; nor is there even a charge that the surviving partner was in any degree guilty of any wrongdoing in connection with the properties left in his control. The earnings of the partnership for several years before its dissolution ranged between 3.2% and 3.9% on its invested capital. There is no reason to believe that the plaintiffs' testator contemplated any greater return under the management of the surviving partner nor expected any greater return to devolve upon his estate from the arrangement he made. Nor could the defendants' testator in undertaking the charge tendered to him be equitably liable for a return almost twice that which the properties had hitherto earned. This return would be, as nearly as can be calculated, 3.5%, and it is at this rate that we find interest should be allowed.

The next point for discussion is Special Term's reservation of jurisdiction for the purpose of determining the method of payment of the judgment. It is true that the order of this court provided that the method of payment should be determined. However, that direction was made in the light of the then existing situation. As J. J. Shubert was then alive and questions could arise if disposition of properties would be required to make payment, Special Term was directed to make whatever provision the situation called for. The death of J. J. Shubert ends the restriction created by the will of Lee Shubert. As of the present, no question of the method of payment remains, and plaintiffs would be entitled to the same relief as any creditor. If the parties care to make any provisions in this respect for their mutual benefit, it is within their competence, but in theirs only.

We are mindful of the extraordinary duration of the reference and share the plaintiffs' desire that the matter be brought to conclusion without further unnecessary steps. To this end we direct that judgment be settled in accord with the directions herein indicated. Settlement is to be on 20 days' notice to allow time for the following steps necessary for a final disposition: finalization as to any accord between the parties as to payment, which accord, if any, can be included in the judgment; and fixation of the Referee's fee. As to the latter, as no costs are being allowed it will be borne equally by the respective estates. Should it become necessary, the Referee shall, within the 20 days herein provided for, apply, on notice to the parties herein, to this court to fix his fee, and the determination thereof as well as provision for its payment will be included in the judgment.

The United States has intervened as a party for the sole purpose of preserving its rights in the determination of the value of the interest of the estate of Lee Shubert in the partnership. The points raised parallel those raised by the parties, and nothing in addition need be stated in regard to them.

Order of Special Term entered March 2, 1966, should be modified on the law and the facts and as a matter of discretion in accord with the foregoing opinion, and judgment should be directed to be settled on 20 days' notice without costs to any party.

Botein, P. J., Stevens, Eager and Tilzer, JJ., concur.

Order entered March 2, 1966, unanimously modified, on the law and the facts, and as a matter of discretion in accord with the opinion of this court filed herein, and judgment directed to be settled on 20 days' notice without costs or disbursements to any party.