Major LEWIS, Petitioner,

v.

Earl L. BUTZ, Secretary of Agriculture
and the United States of America,
Respondents.

No. 74–1812.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1975.

Decided March 19, 1975.

Hartje & Hartje, Conway, Ark., for
petitioner.

Carla Hills, Asst. Atty. Gen., New
York City, and Leonard Schaitman and
Frederic D. Cohen, Attys., Civ. Div.,
Dept. of Justice, Washington, D. C., for
respondents.

Before VAN OOSTERHOUT, Senior
Circuit Judge, ROSS, Circuit Judge, and
TALBOT SMITH, Senior District
Judge.*

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

PER CURIAM.

Major Lewis, who operates Major Lewis Livestock Auction Sales in Conway, Arkansas, petitions this Court under 7 U.S.C. § 194(a) for review of a decision and order of the Judicial Officer of the United States Department of Agriculture. The Judicial Officer adopted as his own an initial decision and order written by an administrative law judge who had held a hearing on the matter. The administrative law judge found that Lewis had violated section 312(a) of the Packers and Stockyards Act, 7 U.S.C. § 213(a)[1] and section 201.43(b) of the regulations promulgated under the Act, 9 C.F.R. § 201.43(b) (1974),[2] by refusing to honor a check drawn on his bank account to pay for cattle purchased on his behalf by an agent. Lewis was ordered to cease and desist from such violations and was suspended as a registrant under the Act for 14 days.

Lewis and Henry DeJong entered into an oral joint venture agreement to buy and sell livestock in commerce around April 1, 1972. Lewis was to supply the necessary money while DeJong was to supply his services in picking out and purchasing livestock to be shipped to Lewis in Conway for resale. Lewis gave DeJong a checkbook and the authority to write checks on Lewis' account.

DeJong went to Iowa and purchased a number of cattle and hogs during the next few weeks, paying for them with checks drawn on Lewis' account. He generally signed these checks with both his and Lewis' name. When the checks arrived at the bank in Conway that institution would phone Lewis who approved payment.

Between April 13 and May 8, 1972, DeJong purchased 96 head of mixed cattle for the joint venture and had them shipped to the Mahaska Sales Company barn in Oskaloosa, Iowa, for assembly and shipment to Lewis in Conway. The Mahaska Sales Company was managed by Dennis E. Bandstra. On May 6, 1972, 36 of these cattle were sold in Iowa and the sales price remitted to Lewis.

On May 13, 1972, Lewis' truck arrived at Mahaska Sales to load the rest of the cattle. That same day DeJong bought 20 additional head of cattle from Bandstra and paid for them with a check for $5000.00 drawn on Lewis' bank account. DeJong signed the check simply "Major Lewis." Bandstra was told by DeJong that he had authority to issue checks on Lewis' account, and Bandstra also knew that other cattle dealers in the area had sold animals to DeJong, had been paid in a similar manner and had experienced no difficulty with the checks. Lewis' truck loaded 58 head of cattle, all it could hold, including the 20 head purchased that day from Bandstra. Lewis received these specific cattle.

Some four to six weeks later Bandstra presented the $5000.00 check for payment through regular banking channels. It was returned unpaid because the signature was irregular. Subsequently, on the advice of DeJong, Bandstra tried again to cash the check and once again Lewis' bank refused to honor it. In both cases the bank phoned Lewis and both times Lewis refused to authorize payment. When Bandstra finally telephoned Lewis directly with his problem Lewis told him he would not honor the check until he was satisfied that he had received all his livestock from Iowa.

---

1. 7 U.S.C. § 213(a) provides:

It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling, in commerce, of livestock.

2. 9 C.F.R. § 201.43(b) (1974) provides in pertinent part:

Each packer, market agency, or dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and the determination of the amount of the purchase price, transmit or deliver to the seller or his duly authorized agent the full amount of the purchase price, unless otherwise expressly agreed between the parties before the purchase of the livestock.

Bandstra has never received the $5000.00 for his cattle.

Lewis was concerned because 22 of the cattle purchased by DeJong were not accounted for. However, the evidence indicated that nine had died and that "some" of the remaining 13 had also died, while the remainder had been taken over by Bandstra to pay the feed bill on all the animals which had been assembled at the Mahaska barn by De-Jong.

The administrative law judge found that DeJong was acting as Lewis' agent when he purchased the 20 head from Bandstra, that Lewis had received those same 20 head and that his refusal to pay for them constituted an "unfair" and "deceptive" practice under section 312(a) of the Act and violated section 201.43(b) of the regulations.

■ In Glover Livestock Commission Co. v. Hardin, 454 F.2d 109, 110–111 (8th Cir. 1972), rev'd on other grounds, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), this Court set out the scope of review in cases such as this in the following language:

> The scope of our review is limited to the correction of errors of law and to an examination of the sufficiency of the evidence supporting the factual conclusions. The findings and order of the Judicial Officer must be sustained if not contrary to law and if supported by substantial evidence. Also, this Court may not substitute its judgment for that of the Judicial Officer's as to which of the various inferences may be drawn from the evidence.

*See also* Fairbank v. Hardin, 429 F.2d 264, 266–267 (9th Cir.), cert. denied, 400 U.S. 943, 91 S.Ct. 244, 27 L.Ed.2d 247 (1970); Capitol Packing Co. v. United States, 350 F.2d 67, 72 (10th Cir. 1965); Administrative Procedures Act, 5 U.S.C. § 706(2).

Utilizing this standard we have reviewed the administrative record and are satisfied that the law was correctly applied and that there is substantial evidence to support the findings of fact.

■ While there was conflicting evidence as to whether DeJong was still Lewis' joint venturer at the time of the purchase from Bandstra, this Court may not substitute its judgment for that of the Judicial Officer in resolving this conflict. And whether a joint venture is in existence is a question of fact to be determined by the trier of fact. Kelley Investment Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 386 F.2d 595, 598 (8th Cir. 1967). Here there was substantial evidence to support the finding of a joint venture at the time of the purchase from Bandstra because DeJong testified that his working agreement with Lewis had not terminated until more than a month after the 20 head had been bought and Lewis' own records showed that his bank had honored checks drawn by DeJong for the purchase of cattle after April 19, 1972, the date Lewis claims he ended the joint venture. Additionally, there is evidence that Lewis knew that DeJong had purchased the 20 head on his behalf; and it is undisputed that Lewis did, in fact, receive those specific cattle in a shipment brought to Conway in a truck he had dispatched to pick up livestock at the Mahaska barn.

■ Lewis' claim that he properly refused to honor the Bandstra check because he received fewer cattle from Iowa than DeJong had purchased in toto and because he has never received a complete accounting from Bandstra is without merit. There is no evidence that any overall shortage is attributable to Bandstra. And, regardless of any question regarding the feed bill and the appropriated cattle, the issue here is whether DeJong was acting as Lewis' agent in purchasing the 20 head from Bandstra and whether those cattle were delivered to Lewis. The fact that there may have been an overall shortage between Lewis and DeJong would not justify a refusal to pay Bandstra for the cattle he sold to Lewis.

The decision and order of the Judicial Officer is affirmed.