BANK OF ST. LOUIS, a Banking Corporation, Appellee,

v.

John J. MORRISSEY, Appellant, Cross-Appellee.

Edwin APPEL, John F. Sullivan, and Albert Stern,

v.

Henry A. LONGMEYER, Appellee, Cross-Appellant.

Nos. 78–1338, 78–1367.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1979.

Decided May 1, 1979.

Reed Johnston, Jr. of Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for Morrissey; Arthur L. Smith, St. Louis, Mo., on brief.

Robert S. Allen of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Longmeyer; Andrew Rothschild, St. Louis, Mo., on brief.

Before GIBSON, Chief Judge, and STEPHENSON and McMILLIAN, Circuit Judges.

GIBSON, Chief Judge.

In this diversity case, we again consider a contract dispute which arose from the collapse of cattle prices in 1974. Previously, in *Kropp v. Ziebarth*, No. 78-1182 (8th Cir. February 28, 1979), we were faced with alleged breach of a contract to purchase cattle of various *exotic* breeds. In this case the *exotic* aspect is supplied by the cattlemen rather than the cattle. EFG Cattle Company (EFG) was a joint venture organized by Stephen D. Oppenheim of the New York accounting firm of Oppenheim, Appel, Dixon and Co. EFG was designed as an entity through which clients of the Oppenheim firm could invest in cattle feeding operations in the Midwest and gain tax advantages by deducting feed and interest expenses in one year while deferring income recognition to the following year

when the cattle were sold. For the 1973–74 program, James J. Morrissey acted as the general partner for EFG which was at that time purported to be a limited partnership. When cattle prices fell in 1974, the paper losses which had been coveted turned into a plague of actual losses, and the parties involved discovered that they did not share an understanding as to how losses should be allocated. This resulted in litigation. The District Court[1] resolved the various claims and entered judgment that, *inter alia,* awarded Morrissey, on behalf of EFG $364,977.11 against Henry Longmeyer, the manager for the project. Both Morrissey and Longmeyer appeal.[2] We affirm.

In carrying on its activities, EFG utilized the services of a cattle manager. He was a person who was familiar with cattle feeding operations and had the necessary connections for credit in the Midwest as well as knowledge of actual feedlot operators. The cattle manager served to coordinate all activities as well as oversee and inspect the cattle from time to time. Finally, he was responsible for marketing the cattle at the appropriate time. The EFG operation had been going on for several years prior to 1970 when Oppenheim was introduced to Henry Longmeyer by Morrissey. Longmeyer was a farmer-businessman in the St. Louis area. He agreed to and did manage the 1970–71, 1971–72, 1972–73, and 1973–74 cattle programs for EFG. Each year he bought the cattle, selected the feedlots, arranged for the cattle to be fed at the feedlots, inspected the cattle, and eventually arranged for their sale. In addition, Longmeyer assisted in arranging financing for the necessary cattle loans. In 1972–73 and 1973–74, the loans were made by the Bank of St. Louis.[3] For the 1970–71 program, Longmeyer was paid a management fee of five dollars per head, of which he was to pay one dollar to Morrissey for having brought EFG and Longmeyer together, and Longmeyer was to receive one-half of the

profits of the program. During subsequent years, the management fee was reduced to four dollars per head, but the even division of profits remained undisturbed. Longmeyer was not obligated to continue paying a finders fee to Morrissey; however, he apparently continued to do so for the 1971–72 and the 1972–73 programs.

There was no written agreement between EFG and Longmeyer. As long as the feeding operations were profitable, this did not cause any serious problems. However, in the 1973–74 program year, losses occurred. At that time the parties discovered that they had varying and conflicting views as to how losses were to be allocated. Both parties understood that EFG would pay the first fifteen dollars of loss. However, Morrissey and Oppenheim, on behalf of EFG, took the position that Longmeyer was responsible for all losses over fifteen dollars per head. In contrast, Longmeyer was of the opinion that he was responsible for only one-half of the losses over fifteen dollars per head. Since the amount of loss in excess of fifteen dollars per head was $1,528,-741.78, a substantial amount rested upon which version of the agreement was to be followed. This has been the central question in this appeal.

The litigation growing out of this loss began on May 7, 1976, when the Bank of St. Louis filed a complaint against Morrissey, seeking to recover sums allegedly due the bank on a promissory note signed by Morrissey. On December 29, 1976, Morrissey filed a first amended answer, counterclaim, and third-party complaint. In the third-party complaint, Morrissey joined Longmeyer as a third-party defendant and alleged that Longmeyer was liable for losses in excess of fifteen dollars per head. On May 19, 1977, Morrissey was permitted by the District Court to file a supplemental and amended answer in which he deleted his allegation that he was the sole general

1. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

2. Although the Bank of St. Louis is listed as an appellee, the issues raised on this appeal and

cross-appeal relate only to the dispute between Morrissey and Longmeyer.

3. Longmeyer is a member of the board of directors of the Bank of St. Louis.

partner of EFG and instead alleged that he was the assignee of all partners of EFG.[4]

The case was tried to the District Court without a jury. In a thorough memorandum of findings of fact and conclusions of law, the District Court resolved the issues presented by the case. In this memorandum, dated January 6, 1978, and an accompanying order, the District Court awarded Morrissey a judgment in the amount of $364,977.22 under the third-party action against Longmeyer.[5]

The District Court entered findings of fact and conclusions of law including a finding that Longmeyer was entitled to the agreed-upon management fee and that the parties had agreed on an even division of profits and that EFG would bear the first fifteen dollars per head of loss. The District Court found that there was no agreement with respect to division of losses in excess of fifteen dollars per head. The District Court concluded that New York law should govern the relationship between Longmeyer and EFG. Under that law, the court held that the relationship was a joint venture, and that in the absence of an agreement on the sharing of losses in excess of fifteen dollars per head those losses should be evenly divided under New York law. In a subsequent order the District Court denied Morrissey an award of prejudgment interest to which Morrissey claimed he was entitled under New York law. This appeal by both parties followed.

Two questions are presented by Morrissey's appeal: (1) Should the judgment in favor of Morrissey be increased from an amount ($364,977.11) based on one-half of the losses in excess of fifteen dollars per head to an amount ($447,177.22) based on one-half of all losses incurred? (2) Should

an award of prejudgment interest be made to Morrissey on his recovery from Longmeyer?

The Longmeyer cross-appeal presents two issues which can be summarized: (1) Is Morrissey barred from recovery by the fact that his pleadings alleged a contract for the division of losses which was not proven? (2) Is the District Court's finding of a joint venture between Longmeyer and EFG clearly erroneous?

We will first consider the matters raised on the cross-appeal. If Longmeyer prevails on either of those issues, the judgment will have to be reversed and it will not be necessary to reach the questions presented by Morrissey's appeal.

■ It is difficult to understand the basis for Longmeyer's first allegation of error. However, as we understand it, Longmeyer is urging that Morrissey brought suit on the basis of an oral contract, one of the elements of which was that Longmeyer would bear the risk of all losses over fifteen dollars per head. The District Court declined to find that a contract concerning allocation of losses over fifteen dollars per head had been agreed upon. Therefore, according to Longmeyer, Morrissey was not entitled to recover any amount.[6] Longmeyer relies primarily upon a long series of decisions of Missouri state courts applying technical rules of pleading in contract actions. *See, e. g., Cole v. Armour,* 154 Mo. 333, 55 S.W. 476 (1900); *Young v. Hall,* 280 S.W.2d 679, 681 (Mo.Ct.App.1955); *Usona Mfg. Co. v. Shubert-Christy Corp.,* 132 S.W.2d 1101, 1103 (Mo.Ct.App.1939). Longmeyer does not specify why federal courts hearing this action should be concerned by technical rules of state pleading. The law is clear

---

**4.** Apparently the necessary filings to establish a limited partnership under New York law had not been made, thus EFG was a general partnership or joint venture.

**5.** The District Court found Longmeyer liable for one-half of all losses over fifteen dollars per head. However, Longmeyer was given credit for payments he had made to the Bank of St. Louis and for the unpaid portion of his management fee.

**6.** Longmeyer makes this argument on appeal even though he admitted in testimony that as he understood the agreement he was responsible for one-half of all losses in excess of fifteen dollars per head. In other words, Longmeyer essentially admitted that he was liable for the amount of the District Court judgment.

that the federal courts apply the Federal Rules of Civil Procedure in questions regarding pleadings, not state rules. *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 698 (8th Cir. 1979); *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 367 F.2d 625, 629 (3d Cir. 1966). Rule 8 of the Federal Rules of Civil Procedure provides the general rules for pleading in contract actions.[7] 2A Moore's Federal Practice ¶ 8.17[6] (1975); 5 Wright and Miller, Federal Practice and Procedure: Civil § 1235 (1969).

In the present case, Morrissey's third-party complaint read in pertinent part:

4. In or about December, 1973, E.F.G. Cattle Company (hereinafter referred to as "E.F.G."), and third party defendant entered into an oral agreement for the buying and feeding of cattle whereby it was agreed that (1) E.F.G. would finance the purchase, care and feeding of a number of head of steers; (2) third party defendant would arrange for the purchase, care, feeding and eventual sale of the cattle; (3) the parties would divide equally the net profits, if any, from the sale of the cattle; and (4) E.F.G. would bear the risk of loss to the cattle, feed, or other related property but third party defendant would bear any net loss in excess of $15.00 per head of cattle.

5. Thereafter, pursuant to the agreement, E.F.G. financed the purchase, care and feeding of approximately 12,000 head of cattle, partially through loans made to individual partners of E.F.G. by plaintiff Bank of St. Louis on December 13, 1973, and third party defendant arranged for the purchase, care, feeding and eventual sale of the cattle.

6. On the sale of the cattle, E.F.G. sustained a net loss on the investment of $1,250,000, being the difference between the total cost of the purchase, care and feeding of the cattle and the proceeds of sale. The amount of the net loss in excess of $15.00 per head of cattle is $1,070,-000.

7. Pursuant to the oral agreement of the parties, third party defendant is obligated to pay E.F.G. the net loss in excess of $15.00 per head of cattle, $1,070,000.

8. Although demand has been made, third party defendant has refused and still refuses to pay any part of the net loss in excess of $15.00 per head of cattle.

WHEREFORE, third party plaintiff prays judgment against third party defendant for the sum of $1,070,000, together with interest thereon and the costs of action, and for such other and further relief as the court deems proper.

■ In our view, the third-party complaint fully complied with the requirements of Rule 8, Fed.R.Civ.P. Specifically, it appears to contain "a short and plain statement of the claim, showing that the pleader is entitled to relief" as required by the rule.

---

7. Rule 8 Fed.R.Civ.P. states, in part:

(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

 * * * * * *

(e) Pleading to be Concise and Direct; Consistency.

(1) Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required.

(2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he had regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

(f) Construction of Pleadings. All pleadings shall be so construed as to do substantial justice.

The third-party complaint gave Longmeyer adequate notice that Morrissey was contending that a relationship of a contractual nature existed between EFG and Longmeyer. The fact that the District Court eventually concluded that the relationship was a joint venture but that the parties had failed to agree on a division of losses in excess of fifteen dollars per head does not render the pleading inadequate or undermine the judgment given by the District Court.

■ The second issue in Longmeyer's cross-appeal is whether the District Court erred in finding a joint venture existed between Longmeyer and EFG. The existence of a joint venture is a factual question to be determined by the trier of fact on the basis of the evidence. *Lewis v. Butz,* 512 F.2d 681, 683 (8th Cir. 1975). Longmeyer relies on three specific factors which he believes preclude the finding of a joint venture in this case. First, he contends that the finding of a joint venture was incompatible with the third-party complaint filed by Morrissey. We have previously considered and rejected that argument. The Morrissey pleading was entirely sufficient under the Federal Rules of Civil Procedure, and did not preclude a judgment based in part upon a theory of joint ventureship between Longmeyer and EFG.

■ Second, Longmeyer appears to be arguing that the existence of a joint venture or partnership including all EFG participants negates the possibility of a joint venture existing between EFG and Longmeyer. However, under New York law, a partnership such as EFG can enter into a joint venture with a third party. *Silberfeld v. Swiss Bank Corp.,* 273 App.Div. 686, 79 N.Y.S.2d 380, 382, *aff'd,* 298 N.Y. 776, 83 N.E.2d 468 (1948). Under this circuit's factual approach to the existence or non-existence of a joint venture, we cannot say that the use of the words "joint venture" in testimony is crucial to the finding of a joint venture. There certainly was evidence that the parties undertook a joint enterprise in carrying on the business of fattening cattle.

■ Longmeyer finally argues that the evidence presented by Morrissey and Oppenheim negates the existence of a joint venture. Longmeyer notes that Oppenheim prepared financial statements showing the amounts paid to Longmeyer as a fixed amount per head plus incentive compensation. Drafts of contracts between EFG and Longmeyer which were never signed but which were prepared by Morrissey and Oppenheim refer to Longmeyer as an independent contractor. Additionally, Longmeyer notes that Oppenheim prepared and filed income tax returns reflecting a partnership among EFG participants but did not file income tax returns for a joint venture between Longmeyer and EFG. While this evidence was relevant to the question, we do not believe it was determinative. The motivation for the EFG endeavor was legitimate tax avoidance. It is understandable that the documents drawn by the accountant in regard to that would reflect an interpretation of events consistent with the desired tax result. However, in this contract litigation we are concerned with what actually occurred between the parties. The factual finding that a joint venture existed between Longmeyer and EFG is not clearly erroneous.

Turning to the issues raised in Morrissey's appeal, we must first consider whether the District Court erred in basing its judgment on an equal division of the losses in excess of fifteen dollars per head rather than an equal division of all losses. The District Court applied the substantive law of New York to this issue. Neither party appears to challenge the applicability of New York law to this portion of the case, and Morrissey affirmatively embraces it. Under New York law, the District Court found that the parties were engaged in a joint venture between Longmeyer and EFG for the purpose of feeding cattle. We have found this conclusion to be not clearly erroneous. The District Court further found that there was no agreement between the parties as to the formula for division of losses in excess of fifteen dollars per head. Again, there is no challenge to that finding and cannot be. While the District Court

could certainly have found an agreement based upon the testimony of either Morrissey and Oppenheim or Longmeyer, it instead found that the parties had never agreed on either version of the division of losses. Applying New York law in this situation, the District Court concluded that the losses of which a division had not been agreed upon should be divided equally, as profits were to have been equally shared. *Anderson v. National Producing Co.,* 253 F.2d 834 (2d Cir.), *cert. denied,* 357 U.S. 906, 78 S.Ct. 1151, 2 L.Ed.2d 1157 (1958); *Riley v. Maran,* 82 Misc.2d 702, 370 N.Y.S.2d 302, 306 (Sup.Ct.1974).

■ Morrissey contends that the District Court should have viewed the division of all losses as a single term of the contract, thus failure to agree on the payment of losses in excess of fifteen dollars would preclude there being any enforceable agreement on losses under fifteen dollars per head. Morrissey has not suggested that the precise question he presents has ever been decided in his favor by the courts of New York. While the position has some surface attractiveness, we are not convinced that the District Court's contrary approach was in error. Morrissey, in effect, is contending that EFG would not have agreed to accept liability for the first fifteen dollars of losses had it realized that Longmeyer would not be held liable for all losses over fifteen dollars per head. It is probably also true that each party viewed the entire relationship as having interrelated profit and loss potential. However, despite the obvious misunderstanding as to the relative liability of each party for losses, the parties did work harmoniously under a series of contracts during years in which profits were made. It seems also probable that, had losses in 1973–74 been less than fifteen dollars per head, the parties would have acted harmoniously in suffering their losses at that time. The mere fact that losses exceeded fifteen dollars per head does not require the

denial of the benefit to Longmeyer of the agreement that EFG would withstand the first fifteen dollars of loss. In other words, Morrissey's approach would make the enforceability of the fifteen dollar loss agreement dependent upon whether the losses were greater than or less than fifteen dollars. In fact, we believe that portion of the agreement is enforceable and the District Court was correct in supplying a term only in regard to losses in excess of fifteen dollars per head.

■ The final issue in this case is whether the District Court erred in denying prejudgment interest on Morrissey's recovery. Morrissey contends that Missouri has adopted the conflict of laws rules stated in the *Restatement (Second) of Conflict of Laws. Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263, 1267 (8th Cir.), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). Under the *Restatement (Second),* the court should apply the law of the state which has the most significant relationship to the transaction and the parties. This is specifically made applicable by section 207 of the *Restatement (Second)* to the question of the measure of recovery for breach of contract. We agree with Longmeyer when he notes that the states of Missouri and Illinois had some relationship to the transaction and the parties. However, we believe that considering the entire program, the District Court was correct in determining that New York had the most significant relationship and that New York law should be applied. By statute, New York provides that interest in contract actions shall be recovered from the earliest ascertainable date the cause of action existed. N.Y.Civ. P.Law and Rules § 5001.[8] That same section, however, contains an express exception for situations in which the action is of an equitable nature. In those cases interest shall be computed in the court's discretion.

---

8. N.Y.Civ.P.Law and Rules § 5001(a) provides:

 Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with

 title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

Morrissey contends that his recovery was for breach of contract and thus the mandatory prejudgment interest sanction applies. Longmeyer contends that the recovery was not for breach of contract because the District Court expressly found that there was no agreement as to the division of losses in excess of fifteen dollars per head, and thus the mandatory prejudgment interest section does not apply. The parties have not suggested to us that the precise issue here presented has ever been decided by the courts of the State of New York.

■■■■■ This is not a case in which we can defer a question of state law to the District Court because of the District Court's greater familiarity with the law being applied. Obviously a federal district judge in Missouri will generally have no more familiarity with the law of New York than do the members of this court. New York courts have refused to grant mandatory prejudgment interest in cases where recovery was had on the theory of *quantum meruit,* even though breach of contract had been originally alleged. *Lesjac Realty Corp. v. Mulhauser,* 43 Misc.2d 439, 251 N.Y. S.2d 62 (Sup.Ct.1964). New York courts also deny automatic prejudgment interest in cases of accounting of partnership assets. *Shubert v. Lawrence,* 27 App.Div.2d 292, 278 N.Y.S.2d 537, 542 (1967); *Roth v. Zaidenberg,* 272 App.Div. 726, 74 N.Y.S.2d 546, 548 (1947). In the present case the action was originally brought to enforce a contract. However, the recovery obtained was equitable in nature in that the court found that the parties to the joint venture had not agreed upon a division of losses in excess of fifteen dollars per head and then supplied a division formula. The case was tried in the federal courts. Under the Federal Rules of Civil Procedure there is in this type of action no clear line between legal and equitable actions as apparently is contemplated by the New York statute. Under these circumstances we hold that it was appropriate for the District Court to view Morrissey's recovery as being in the nature of an equitable recovery, thus the question of an allowance of prejudgment interest was within the discretion of the District Court and its discretion was not abused.

In conclusion, we find that the findings of fact of the District Court were not clearly erroneous and it applied correct principles of law. The judgment of the District Court is affirmed in all respects. Each party shall bear his own costs on this appeal.

Judgment affirmed.